## ROUTT *v.* BERRIDGE.

1. AUTOMOBILES—LEFT TURNS—INSTRUCTIONS—CONTRIBUTORY NEG-
LIGENCE—QUESTION FOR JURY.

In accident case arising out of collision between defendants'
truck and plaintiff's car as latter crossed to the left to enter a
gasoline filling station while in front of the truck, trial judge's
instruction that it was for jury to find whether plaintiff's
failure to look in front of him while negotiating a left-hand
turn was negligence or not and whether, if negligence, it was
a contributing factor to the injury *held*, not error when con-
sidered in connection with remainder of the charge.

2. TRIAL—INSTRUCTIONS—REFUSAL TO GIVE REQUESTS TO CHARGE.

Where instruction as given by trial judge was a fair presenta-
tion of law applicable to matter of contributory negligence in
action for personal injuries by plaintiff motorist who made
left turn in front of defendants' oncoming truck, the court's
failure to give plaintiff's specific requests relative thereto was
not error.

3. AUTOMOBILES—NEGLIGENCE—GROSS NEGLIGENCE—LEFT TURNS.

Although failure of truck driver to pass to left of motorist who
made a left turn in front of truck may have been negligence,
it was not gross negligence.

4. NEGLIGENCE—SUBSEQUENT NEGLIGENCE—AUTOMOBILES.

The doctrine of subsequent negligence rests upon the rule that
the negligence of the plaintiff had ceased to exist as a proximate
cause while the negligence of the defendant continued; hence
where the negligence of each motorist involved in a collision
continues to the moment of impact, there is no room for the
doctrine of subsequent or discovered negligence.

5. AUTOMOBILES — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — LEFT
TURN.

Defendant truck driver who continued on his right-hand side of
pavement while near filling station at the right, although per-
haps negligent, had a right to believe plaintiff motorist would

As to fact that the doctrine of subsequent negligence is applicable
only when plaintiff has negligently placed himself in a position of
peril from which with due care he could not extricate himself, see
2 Restatement, Torts, § 479 (a).

not carelessly drive car in front of him in making a left turn to enter filling station when plaintiff had ample time, if he had been looking, to reach a place of safety.

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted June 12, 1940. (Docket No. 67, Calendar No. 41,045.) Decided October 7, 1940. Rehearing denied November 13, 1940.

Case by Leonard R. Routt against Olin R. Berridge and Clarence Kellogg for damages for personal injuries sustained in a motor vehicle collision. Verdict and judgment for defendants. Plaintiff appeals. Affirmed.

*Alexis J. Rogoski* and *R. Glenn Dunn,* for plaintiff.

*Alexander, McCaslin & Cholette,* for defendants.

POTTER, J. Plaintiff began suit against defendants to recover damages for personal injuries claimed to have been caused by a collision between plaintiff's automobile and a Chevrolet truck owned by the defendant Berridge and driven by the defendant Kellogg on April 10, 1937, at Howard City, Michigan. From a judgment for defendants, plaintiff appeals.

Plaintiff claims the defendant Kellogg drove the defendant Berridge's truck at a high, dangerous and excessive rate of speed north on highway US 131 between 3 and 4 o'clock in the afternoon; that plaintiff was driving in the opposite direction on his own side of the highway but planned and desired to drive into an automobile gasoline filling station on the east side of the highway; that plaintiff gave a signal to turn and drove across the highway and wholly cleared the highway and was on the driveway of the filling station when the defendant Kellogg drove off the right-hand side of the highway and struck and demolished plaintiff's

automobile and caused plaintiff severe and permanent injuries set forth in the declaration. It is claimed by plaintiff that Kellogg drove the truck (a) carelessly and heedlessly along the highway and into the driveway of the filling station and at a speed so as to endanger plaintiff; (b) that he failed to drive the truck at a careful and prudent rate of speed but drove it at an excessive rate of speed so as to be unable to stop it within the assured clear distance ahead; (c) that defendant Kellogg drove the truck at a speed of 50 miles an hour in violation of the speed law of the State of Michigan fixed at 15 miles an hour in the business district and 20 miles an hour in the residential district of the village; (d) that he drove the truck in violation of the speed limit of the ordinance of the village of Howard City fixing the rate of speed at 15 and 20 miles an hour; (e) that the brakes on defendants' truck were defective; (f) that the defendant Kellogg did not have the truck under control; (g) that Kellogg failed to keep the proper lookout for traffic on the highway; (h) that he carelessly and wrongfully disregarded the signal given by plaintiff of his intention to make a left-hand turn with his automobile; (i) that he wrongfully drove against plaintiff's automobile when it was in a position of safety; (j) that the defendant Kellogg had ample opportunity to avoid the collision by driving to the left of plaintiff's automobile but permitted it to collide with it in violation of said duty; (k) that defendant Kellogg saw plaintiff's automobile 125 feet away but that he willfully, wantonly and recklessly drove the truck against it, and that the proximate result of his willful, wanton and reckless conduct in the operation of the truck was the injury to plaintiff and to his automobile; (l) that subsequently and in the course of the trial plaintiff's declaration was amended so as to charge defendant Kellogg with

carelessly and negligently failing to sound his horn.

The damages complained of were serious. Plaintiff's right ear was partially cut off, he suffered injury to his right elbow, there was a partial severance of the triceps muscle and a marked loss of blood, his right shoulder blade was dislocated and broken, his right leg was hurt and bruised, his left hand was maimed and bruised so as to destroy the knuckles, he was jammed between the front seat and the steering wheel, causing internal injuries, and was otherwise seriously injured about his head; and he suffered great inconvenience and damage in being treated as well as great pain. Plaintiff suffered loss to the extent of $25 for transportation to his home, $110 for hospital bills at Hackley hospital, and was to great cost and expense in nurse's care, hospitalization and medicines. It is plaintiff's claim that in the future he will continually suffer such loss; that he is seriously and permanently disabled by reason of the injuries suffered from carrying on his usual and ordinary vocation; that his automobile was wholly demolished, his clothing damaged and destroyed; and that he was without any fault or negligence contributing to the injury.

Defendants deny the truck was being operated at a high, dangerous or excessive rate of speed and that plaintiff was free from contributory negligence, but allege that plaintiff's injuries were due solely to his contributory negligence; deny that plaintiff signaled his intention to turn prior to the accident; deny that defendant Kellogg was guilty of contributory negligence; and particularly deny that defendant Kellogg was guilty of willful, wanton and reckless misconduct and that plaintiff is entitled to any judgment of any kind, and allege they are entitled to a judgment of no cause for action.

The proof shows that defendants were carrying two horses in the truck in question, that it was

equipped with hydraulic brakes properly tested and in good order; that there was no rain, ice or sleet upon the pavement but that it was dry; that as the defendant Kellogg came · over the hill south of Howard City he saw plaintiff's automobile approaching possibly 1,300 to 1,600 feet away. Plaintiff says he looked toward the top of the hill and saw no car or truck approaching anywhere between him and the top of the hill which was approximately 1,300 to 1,600 feet away. Defendant Kellogg, when within about 100 feet of plaintiff, saw plaintiff had started to swing across the pavement and when within 25 or 30 feet plaintiff swerved sharply to the left. When plaintiff was coming on and within approximately 100 feet of the truck plaintiff turned partially around in the seat and seemed to be looking at the back of the automobile. A woman was riding with plaintiff. The truck probably was within about 20 feet of the automobile in question when the woman screamed or "hollered" and put up her hands. Plaintiff testified that as he was approaching the defendant Kellogg:

"I looked ahead and I didn't see anything between me and the top of the hill and I proceeded across. Just when I was crossing the center of the street across the black line, a picture lying on top of some pillows slid over on the window on the left-hand side and Mrs. Royce called my attention to it, and I reached over my shoulder with my left hand and pushed it back, and when I turned back and looked to the south and the east, just after adjusting the picture, I saw the truck. At that time the front wheels of my automobile were leaving the east edge of the pavement. The truck was opposite the south driveway of the Phillips 66 gas station.

"When I made my first observation to the south I was on the right hand side of the pavement. When I made my observation to the south, my automobile was between the entrance to the Mobile station and the entrance to the Phillips 66 station. * * * When

I made my subsequent observation I was headed southeast, going into the driveway at the northerly entrance of the Phillips station. * * *

"As I looked south when I made my first observation, I could see the brow of the hill and the gasoline station up at the end. I did not see any car between me and the hill at that time. When I saw there was no other vehicle between me and the hill I proceeded to go across. When I first saw the truck it was somewhere opposite the southerly entrance of the Phillips station. * * * That was when I made my second observation after adjusting the picture."

On cross-examination, he testified:

"Just as I was crossing the black line a picture in the back started to slide over to the left. Mrs. Royce called my attention to it, and I adjusted that picture. I turned my head to the left over my left shoulder, glanced over my left shoulder. I had to glance over my left shoulder to put my hand on the picture. By glancing over my left shoulder and putting my hand back I took my attention away from ahead of my car momentarily. I did it momentarily.

"At that time I was crossing from the west side of the highway across to the east side of the highway, and would be crossing in the path of oncoming traffic. While I was adjusting the picture with my left hand I wasn't giving any signal with it. That wasn't any place to signal. I made the signal before I started to turn."

There was testimony on the part of defendants by Leo Davis, who was present at about the time the accident occurred, to the effect that the deputy sheriff asked the plaintiff for his driver's license and also asked him if he signaled or held out his hand and that the plaintiff said, "No," and John H. Prout, the deputy sheriff, also testified that he asked plaintiff if he signaled that he was about to cross the street and he said, "No."

At the conclusion of plaintiff's testimony, defendants made a motion for a directed verdict upon the following grounds:

"First, in making a left turn on this trunk line highway he failed to see that which under the undisputed testimony and physical facts must have been in plain sight; second, he is guilty of contributory negligence because under his own admission he made the left turn in front of another vehicle at a time when he was looking to the rear and had taken his attention from the traffic; third, because under his own testimony when he made the observation at the point he indicated where he first looked until the time of the collision he only traveled approximately 50 feet. * * *

"That while he traveled 50 feet at 10 miles an hour the truck could not have traveled any more than three and a half times that far, so that the truck must have been within a distance of 200 feet and in plain sight, and he did not see it."

This motion to direct a verdict was overruled. The case was tried and submitted to the jury. No objection was made to the introduction of the testimony. Plaintiff's reasons and grounds of appeal are: (1) That the trial judge erred in failing to charge the jury in keeping with plaintiff's theory of the case upon the issue of contributory negligence, and in refusing to give plaintiff's requests to charge Nos. 2, 10 and 11; (2) that the court erred in charging the jury: "I instruct you that it is the duty of one intending to make a left-hand turn first to make a proper and suitable observation to determine whether the turn can be made in safety, and it does not avail a person anything and it is no excuse to say that you looked and failed to see what was in plain sight to be seen. The law charges and holds a person responsible with seeing what is in plain

sight to be seen. The plaintiff admits in this case that he was about to make a left-hand turn and while he was making it at some stage of it anyway, you will remember from the testimony, he looked back to arrange a picture frame or adjust a picture frame in the rear seat of his car. It is for you to say whether in so doing he was guilty of negligence and whether such negligence contributed to cause the injuries sustained by him. If his turning around to adjust that picture frame and his failure to keep a proper observation for approaching traffic was a contributing factor or cause of this collision, then he cannot recover in this case,'' and in refusing to give plaintiff's request to charge No. 12 covering the situation which was the subject matter of the aforesaid portion of the court's charge; (3) that the court erred in giving a charge which as a whole was unbalanced and overemphasized the duty of the plaintiff to establish freedom from contributory negligence; and (4) the court erred in refusing to instruct the jury as to the applicability of the doctrines of gross negligence and discovered negligence to plaintiff's case, and in refusing to give plaintiff's requests to charge Nos. 5, 6, 7, 8 and 9.

In plaintiff's statement of questions involved he says:

''1. Was there manifest error in the charge of the lower court as given?

''2. Did the lower court err in refusing to give plaintiff's requests to charge pertinent to the issue of contributory negligence?

''3. Did the lower court err in refusing to submit to the jury, in keeping with plaintiff's request to charge, the question of plaintiff's right to recover because of defendants' willful and wanton misconduct?

''4. Did the lower court err in refusing to submit to the jury, in keeping with plaintiff's requests, the

issue of plaintiff's right to recover from defendants because of their subsequent negligence?''

This statement of the questions involved is accepted by the defendants who submit another question, namely:

''5. Where plaintiff makes a left-hand turn in front of an oncoming vehicle which was in plain sight, and did not see it until just before the collision, was he guilty of contributory negligence as a matter of law which requires an affirmance of the verdict of no cause of action?''

The trial judge stated it was up to the jury to find whether plaintiff's failure to look while negotiating the left-hand turn was negligence or not, and, if it was negligence, whether it was a contributing factor to the injury. This must be considered in connection with the remainder of the charge. We do not think it was error. *Finkel* v. *Otto Misch Co.,* 291 Mich. 630; *Bresch* v. *Wolf,* 243 Mich. 638. The charge given was a fair presentation of the law applicable to the case and, under such circumstances, failure of the trial court to give specific requests to charge was not error.

Defendant Kellogg's conduct in driving upon the right-hand side of the road, rather than attempting to avoid plaintiff by passing to the left, may have been negligence but it was not gross negligence.

Plaintiff claims the court erred in refusing to submit to the jury the question of defendants' subsequent or discovered negligence. The doctrine of subsequent negligence rests upon the rule that the negligence of the plaintiff had ceased to exist as the proximate cause while the negligence of the defendant continued. If the negligence of each driver continues as a proximate cause until the moment of impact, there is no room for the doctrine of subse-

quent or discovered negligence. Although the defendant may have been negligent, he had a right to believe plaintiff would not carelessly drive his automobile in front of him in making the turn when plaintiff had ample time, if he had been looking, to reach a place of safety.

It is unnecessary to consider the question raised by defendants in view of the disposition of this case.

Judgment affirmed, with costs.

Bushnell, C. J., and Sharpe, Chandler, North, McAllister, Wiest, and Butzel, JJ., concurred.