GRIEWSKI *v.* IRONWOOD & BESSEMER RAILWAY &
LIGHT CO.

1. STREET RAILWAYS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.
   In an action against a street railway company for the wrongful death of plaintiff's decedent, evidence that decedent, a man 52 years of age, in good health, in broad daylight, started to cross a street car track, walking diagonally towards the approaching car which was in plain sight, less than 12 feet away, and running at a rate of speed not in excess of 6 miles an hour, *held*, sufficient to sustain the finding of the trial court that decedent was guilty of contributory negligence as a matter of law.

2. SAME—SUBSEQUENT NEGLIGENCE.
   Where, after decedent entered the danger zone, there elapsed less than two seconds before he was struck by the car, the doctrine of subsequent negligence is not applicable, there being insufficient time for the brain and body to function properly to stop the car in time to avoid the injury.

3. SAME—NEGLIGENCE—REASONABLE CARE.
   In such action, defendant, through its agents, must be held to the exercise of reasonable care from the instant decedent placed himself in a position of peril.

4. SAME—NEGLIGENCE—SUBSEQUENT NEGLIGENCE.
   Even if the motorman was guilty of negligence in failing to observe decedent as he entered the danger zone, no greater burden is cast upon defendant than it would have been obliged to sustain had decedent been seen at the instant of his entry; failure to act during the lapse of a single second being insufficient to invoke the doctrine of subsequent negligence.

Error to Gogebic; O'Brien (Patrick H.), J., presiding. Submitted October 28, 1919. (Docket No. 13.) Decided February 27, 1920.

Case by Mary Griewski, administratrix of the estate

On right of motorman to assume that no one will attempt to cross track so close in front of car as to render collision probable, see note in 5 L. R. A. (N. S.) 1059.

On right of motorman to assume that person on track will get out of the way, see note in 21 L. R. A. (N. S.) 880.

of Anton Griewski, deceased, against the Ironwood & Bessemer Railway & Light Company for the alleged negligent killing of plaintiff's decedent. Judgment for plaintiff. Defendant brings error. Reversed, and no new trial ordered.

*Charles M. Humphrey* (*Sanborn, Lamoreaux & Pray,* of counsel), for appellant.

*James A. O'Neill,* for appellee.

This action arose out of the alleged negligent killing of plaintiff's decedent by the defendant through its agents. Plaintiff's decedent was a man 52 years of age, in good health, who had lived for many years in the city of Ironwood and for upwards of a year had conducted a grocery and meat market on the north side of Aurora street in said city about midway between Lowell and Lawrence streets. Upon Aurora street is a single street car track over which defendant operates both urban and interurban cars. The urban cars run between the city of Ironwood and Hurley, Wisconsin, and the interurban between the city of Bessemer and the city of Ironwood. The accident happened at, or very shortly after, 12 o'clock noon near the center of the block between Lowell and Lawrence streets. The interurban car had gone west, passed Lawrence street for a distance of about a block, where it changed its course by shifting the trolley and started on the return trip east. As it approached Lawrence street from the west it descended a grade something in excess of three per cent. Between Lawrence and Lowell streets the grade continued to descend but at about 1½ per cent. rate. It was not raining at the time but rain had fallen and the rails were damp or wet. At the time of the accident the car was being operated at a rate of speed certainly not in excess of

6 miles per hour. Plaintiff's decedent, leaving his place of business, walked westerly a short distance, then started to cross Aurora street diagonally in a southwesterly direction. The distance between the curb line and the north rail of the street car track is 17½ feet. The distance between the rails is 4 feet, 8½ inches. While traversing those distances decedent, because of the direction in which he was traveling, faced or partially faced the oncoming interurban car which was in plain view for a block or more as it approached, nevertheless he walked immediately in front of the car, crossed the space between the tracks and was struck just as he was stepping over the southerly rail or immediately after he had stepped over it. The impact threw him to the right and caused injuries from which he died the following day.

The learned trial judge reached the conclusion that plaintiff's decedent was guilty of contributory negligence as a matter of law and so instructed the jury, but being of opinion that the case was one in which the doctrine of subsequent or gross negligence might be applied he charged as follows:

"I charge you, as a matter of law, that even though deceased was guilty of negligence, yet if you further believe from the evidence that the defendant's motorman was also guilty of negligence, and that the negligence of the plaintiff's intestate was precedent, and that the negligence of the defendant's motorman, if any, was subsequent thereto, then the plaintiff would not necessarily be prevented from recovering damages in this case.

"I further charge you that if the deceased was in a position of peril on or near the tracks of defendant and if the motorman on defendant's car saw, or could by the exercise of ordinary care have seen, that the deceased was in such a position of danger, and knew, or had good reason to believe, that deceased could not extricate himself from such position of peril or reach a place of safety, and that great injury to deceased

would result unless the car was stopped or its speed slackened or the deceased warned by the sounding of the gong or otherwise, and if said motorman, after so observing and realizing the peril of the deceased, or after he could by the exercise of reasonable and ordinary care and caution have observed and realized the peril of deceased, could by the exercise of due and reasonable care and diligence have stopped the car or slackened its speed with the appliances he then had on his car, or have sounded a gong so as to have given deceased warning of the close approach of the car, and in failing to do one or all of these things was guilty of negligence which caused the injury to deceased which resulted in his death, then the jury should find for the plaintiff, assessing the plaintiff's damages under the rules to be hereafter given. * * *

"It is obviously impossible to demand that motormen, when running at proper speed, should check their cars whenever they see a pedestrian in front approach the track. If the distance is sufficient for a crossing to be made safely, the motorman has the right to assume that the pedestrian will so cross; if the distance is insufficient, he has the right to assume that the pedestrian will maintain a position of safety at the side of the track. The motorman is not bound to anticipate that the pedestrian will place himself in a place of danger; indeed, he has the right to assume the contrary.

"If you find from the evidence that from the time the motorman discovered, or in the exercise of ordinary care should have discovered, that Mr. Griewski was in a position of danger, the motorman did all in his power to stop the car and prevent the collision, your verdict must be for the defendant.

"You are instructed that the motorman had a right to rely on the pedestrian's observance of the car, up to and until such a time as circumstances developed or a situation developed from which the motorman, in the exercise of reasonable and ordinary care and caution in operating his car along that street, discovered, or could have discovered, that the deceased was in a position of danger. You are instructed that the defendant owed Mr. Griewski the duty only to exercise ordinary care in the operation and management of its street car. * * *

"If the case was such that the plaintiff's intestate suddenly placed himself in a position of danger in front of the car at a time when it was too late for the motorman to stop the car or check the car, or to have sounded the gong or helped him in any way, and so that the motorman could not, by the exercise of reasonable care, have done anything to avoid the injury, then, gentlemen, the plaintiff in this case cannot recover. If, on the other hand, you find by a fair preponderance of the evidence that the motorman in the exercise of reasonable and ordinary care and caution, could have discovered the perilous position of plaintiff's intestate, if he was in a perilous position at any time so that he could have been discovered by the motorman operating that car, and the motorman failed to discover such danger of the deceased, or if, having discovered it, he failed to take measures to avert an injury to plaintiff's intestate, that is to say, failed to take such measures as a reasonably careful and prudent motorman would have taken under the circumstances, then the defendant would be liable. Before you can find for the plaintiff in this case you must find that the negligence of the motorman, if any, was subsequent to the negligence of the deceased; in other words, that the dangerous position of the deceased existed and became apparent to the motorman, or by the exercise of ordinary care would have become apparent to the motorman, in time so that the motorman, by the exercise of reasonable and ordinary care and caution, by doing the things at that time and under those circumstances that a motorman of ordinary care and prudence operating that car would have done, could have avoided injuring the deceased."

The jury rendered a verdict in favor of the plaintiff for $13,883. A motion for a new trial was made upon various grounds but was denied by the court upon condition that plaintiff should remit all of said judgment in excess of the sum of $8,000. The plaintiff did so remit and the judgment was permitted to stand at the lesser sum.

BROOKE, J. (*after stating the facts*). Several wit-

nesses for plaintiff were sworn as to the rate of progress plaintiff's decedent was making immediately before the impact. One says:

"He was walking very slow; the ordinary rate for an old man, * * * an ordinary walk."

Another:

"He was walking not fast or slow, just medium, just the right way, an average walk, just a good brisk walk."

For the defendant one witness testified upon the same point:

"It was a kind of a little fast like; it was not hardly a trot, but a kind of a fast walk."

Another:

"When he started across he started at an ordinary rate, and continued the ordinary rate until he got about in the middle of the road, between the car track and the sidewalk. The truck was coming on the north side of the tracks. It wasn't a very great distance away. It was a little ways behind me. I think Mr. Griewski was a little afraid of the truck on account of the noise it was making, and he started a little faster across the street. In fact he started to run."

Considering all this testimony we think it may be fairly deduced that decedent was progressing diagonally across the street and directly across the track in front of the oncoming car at a rate of speed at least as great as three miles an hour. Indeed the assumption that a higher rate was maintained would probably be justified. Assuming, however, that the rate did not exceed three miles per hour, plaintiff would cover 4.4 feet per second or in two seconds 8.8 feet. The distance between the rails plus the overhang of the car was approximately 8 feet so that from the time of his entrance to the zone of danger to his clearance something less than two seconds elapsed. In dis-

posing of the motion for a new trial the learned circuit judge said:

"The evidence shows that the car was going about four miles an hour and could have been stopped in six or seven feet."

Assuming the analysis of the testimony by the learned circuit judge as to the rate of speed of the car to be justified by the record (though perhaps a slightly higher rate of speed would be nearer correct), the car would be traveling at the rate of a trifle less than 5.9 feet per second or in two seconds 11.8 feet. Decedent and the car came in contact just as he was stepping over the south rail something less than two seconds after he entered the zone of danger. It is clear that defendant's agent had the right to assume that decedent would not attempt to cross in front of the car then less than 12 feet away from him and that he was under no obligation to act until decedent had actually placed himself in a place of danger by stepping on the track immediately in front of the car, then, and then only, the legal duty rested upon defendant's agent to use all reasonable means to avoid injury to decedent whose position of peril was the result of his own antecedent negligence. *Blatnikoff* v. *Railway*, 202 Mich. 69.

The motorman in charge of the car testified as follows:

"When I first saw Mr. Griewski he was just almost directly in front of the car, possibly two or three feet in front of the car. At the time I first saw the load of lumber it was in front of Hogen Nelson's shop, and it was ahead of me, although I cannot say how far. At the time I first saw Mr. Griewski the wagon was just driving out then getting away from the track. I watched the load of lumber continuously from the time I sounded the gong until I saw Mr. Griewski.

"When I first saw Mr. Griewski I threw on the air as fast as I could. That means that I pushed the

lever over.  At that time I cannot state exactly what speed the car was traveling, as I believe it was impossible for anyone to do so, but I believe it was possibly four to seven miles an hour.  I figure that a common horse would travel probably four miles an hour, and I was gaining very slowly on this team. I couldn't be going very much over four miles an hour, but I was going just a little faster than the team.

"Before the accident it had rained hard that day, and I had been on the same car all that morning.  The brakes were good so far as I know—in good condition, and had been working satisfactorily.  The power was good, and the car generally was in good condition.

"At the time I saw the motor truck approaching I did not see Mr. Griewski on the street.  There was no one on the street that I could see.  I could not say exactly what distance the car traveled after I applied the brake before it came to a stop.  It was approximately six to eight feet.  It would be hard for anyone to say."

Witness Ohlin gave expert testimony as follows:

"I am familiar with the Bessemer car.  It is equipped with an air brake.  When that car is moving at about six miles an hour on a level track with a dry, clean rail, it can be stopped within from four to six feet, after the full force of the air is applied. Moving at the same rate and the same brake applied on a wet rail, and on a level track, it could be stopped in from five to seven feet, or probably a little better. If the track is sloping it *may take more.*"

No testimony was introduced in contradiction of that just quoted.  Indeed plaintiff's argument in favor of an affirmance of the judgment is based upon its truth.  We have then a situation in which a heavy interurban car is moving on a wet rail on a down grade.  Plaintiff's decedent enters the zone of danger at a point about 12 feet in front of the car.  An appreciable time must elapse before the brain can act upon the body; a further appreciable time must elapse during which the muscular movement of the body per-

209—Mich.—2.

forms the necessary functions; in applying the air some fraction of a second doubtless is necessary before "the full force of the air is applied."

We do not think it possible, under the facts in this case, for the doctrine of subsequent negligence to find application. No case has been cited, and we apprehend none can be found where the failure to act during a period of at most a single second has been held sufficient to permit the jury to find that the defendant in the exercise of reasonable care might have avoided injury to the one placed in peril by his own negligence. A review of some of the well known cases upon this question will show that the doctrine has been applied only in cases where with the exercise of reasonable care the defendant could readily have avoided injury to the one in peril.

In the case of *Montgomery* v. *Railway Co.*, 103 Mich. 53 (29 L. R. A. 287), it is said:

"It is settled that, when one attempts to cross in front of an approaching train in plain view, he takes his chance of being injured, and cannot complain. *  * * In the present case it is conceded that Grinnell was careless, and, but for the gross carelessness of defendant's servants charged in the declaration and proved on the trial, he could not recover. It is quite a different case than where one attempts to cross in front of the car."

In *Battishill* v. *Humphreys*, 64 Mich. 514, the peril of the child was apparent for a distance of 492 feet, a sufficient distance as this court found to enable the train going three miles an hour to have been stopped before injury to the plaintiff.

In *Bladecka* v. *Electric Co.*, 155 Mich. 253, plaintiff's position and actions were apparent to the defendant's agent for a distance of 250 feet. The street car was being operated at a very low rate of speed wholly under control and yet it was permitted by de-

fendant's agent to overtake and collide with plaintiff's rig.

In the case of *Calvert* v. *Railway*, 202 Mich. 311, defendant's agent noticed plaintiff's attempt to cross in front of him at a point more than 90 feet from the point of the accident. It was demonstrated that the car could have been stopped within a distance of 50 feet, indeed it was stopped within such distance after the regular motorman took charge of the instrumentality.

In the case of *Fike* v. *Railroad Co.*, 174 Mich. 167, it appeared that plaintiff's predicament was apparent to defendant's agent at a point more than 300 feet distant from the point of the collision.

In *Walter* v. *Railway Co.*, 191 Mich. 181, a distance of 700 or 800 feet intervened between the car and the point where the horse jumped upon the tracks, and it appeared from the testimony that, allowing all necessary time in which to have stopped the car, there remained a clear distance of 150 feet. Similar cases where the doctrine has been applied are *Hibbler* v. *Railway*, 172 Mich. 368; *Weitzel* v. *Railway*, 186 Mich. 7; *Millette* v. *Railway*, 186 Mich. 634.

In the discussion of the entire question defendant through its agents must be held to the exercise of reasonable care from the instant the plaintiff's decedent placed himself in a position of peril. The testimony of the motorman indicates that in fact he did not see plaintiff's decedent until he was directly in front of the car only two or three feet distant, but assuming that he was guilty of negligence in failing to observe decedent as he entered the zone of danger, no greater burden is cast upon the defendant than it would have been obliged to sustain had its agent actually seen decedent at the instant of his entry. His failure to act during the lapse of a fraction of a second or at most a single second is not in our opinion such a

failure as would warrant the invocation of the doctrine of subsequent negligence under the authorities of this State.

The judgment is reversed without a new trial.

MOORE, C. J., and STEERE, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.

Justice KUHN took no part in the decision.

