DAVIDSON v. CITY OF DETROIT.

1. STREET RAILWAYS—NEGLIGENCE—FAILURE TO MAINTAIN PROPER LOOKOUT AHEAD.

In action by would-be passenger for personal injuries sustained when right front corner of southbound streetcar struck her as she passed in front of car from east side of street wherein verdict was directed for defendant at the close of plaintiff's proofs, when testimony is viewed in light most favorable to plaintiff defendant's negligence was established by evidence showing its motorman had streetcar moving at 30 to 35 miles per hour without maintaining a proper lookout ahead.

2. SAME—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT—CROSSING IN FRONT OF STREETCAR.

Would-be passenger, 57 years old, of southbound streetcar, who started across from east side of street when car was a block away, continued in front of car which approached at speed of 30 to 35 miles per hour without slowing down, entered track to cross in front of it when it was about 100 feet away, was guilty of contributory negligence as a matter of law since she took the chance of going into a place of obvious danger without taking the precaution of observing whether she could cross in safety.

3. SAME—CONTRIBUTORY NEGLIGENCE.

A reasonably prudent man will not take a chance of streetcars slowing up to let him cross a street.

4. SAME—WOULD-BE PASSENGER—SIGNALS TO STOP—CONTRIBUTORY NEGLIGENCE.

The fact that a would-be passenger of a streetcar who gave signals of her desire to become a passenger had a right to assume that the streetcar would stop at safety zone which she approached in front of car did not obviate the necessity of taking usual precaution before attempting to cross the track in front of the streetcar that showed no evidence of slowing down.

Concurrent negligence barring recovery, see 2 Restatement, Torts, § 478.

5. NEGLIGENCE—DOCTRINE OF SUBSEQUENT NEGLIGENCE.

In order to apply the doctrine of subsequent negligence so as to permit recovery by plaintiff, her negligence must have placed her in a position of danger and then ceased to operate as a proximate cause, and it must be clearly proved that defendant must have discovered, or by the exercise of ordinary care and diligence should have discovered, plaintiff's peril and have had sufficient time and ability to avoid resulting harm by ordinary care and diligence in the use of the means at hand and failed to use it to avert the threatened injury.

6. SAME—CONCURRENT NEGLIGENCE—SUBSEQUENT NEGLIGENCE.

Plaintiff may not recover damages for injuries sustained where defendant's negligence was concurrent with, and not subsequent to, plaintiff's contributory negligence.

7. SAME—SUBSEQUENT NEGLIGENCE.

Since there is no exact standard of measurement by which to determine where negligence ends and subsequent negligence begins, each case must be decided on its own facts.

8. STREET RAILWAYS — CONTRIBUTORY NEGLIGENCE — PROXIMATE CAUSE—PASSING IN FRONT OF CAR—SPEED.

Plaintiff who had signalled southbound streetcar as she came from east side of street and was hit as she had nearly completed passage in front of streetcar by extreme right front corner thereof as motorman neither saw plaintiff nor slowed up speed was not entitled to recover where she failed to show her contributory negligence had ceased to operate as the proximate cause of the accident or that motorman could have avoided the accident with the means at hand when he should have discovered plaintiff intended to cross in front of car.

9. NEGLIGENCE—CONCURRENT NEGLIGENCE—SUBSEQUENT NEGLIGENCE.

Where both parties are guilty of concurrent negligence as a matter of law, the doctrine of subsequent negligence has no application.

10. SAME—SUBSEQUENT NEGLIGENCE—ANTICIPATION OF UNLAWFUL ACTION.

Subsequent negligence may not be imputed to a litigant merely because of his failure to anticipate unlawful action on the part of the one charging him with such negligence.

11. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—DISCRETION OF COURT—SHOWING OF DILIGENCE.

Denial of new trial, sought because of newly-discovered evidence, was not an abuse of discretion where there was no showing of

diligence in attempting to discover the new evidence, which is prerequisite to granting a new trial on such grounds.

Appeal from Wayne; Webster (Arthur), J. Submitted October 6, 1943. (Docket No. 32, Calendar No. 42,349.) Decided December 29, 1943.

Case by Jane Davidson against City of Detroit for personal injuries sustained when she was struck by defendant's streetcar. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Clark, Klein, Brucker & Waples,* for plaintiff.

*Rodney Baxter* and *A. Albert Bonczak,* for defendant.

Boyles, C. J. This is an action for damages sustained by plaintiff when she was struck by defendant's streetcar at the corner of Pingree and Woodward avenue in the city of Detroit. The case was tried before a jury and at the conclusion of plaintiff's proofs the trial court, upon motion by defendant, directed a verdict of no cause for action and entered judgment accordingly. A motion for new trial was denied and plaintiff reviews by general appeal.

Plaintiff, 57 years old, for the past 10 years had resided at 55 Hague street in Detroit. Hague street runs east from Woodward avenue and the continuation thereof west of Woodward is called Pingree avenue. At this point Woodward avenue is 72.1 feet from curb to curb, with separate northbound and southbound streetcar tracks. The car tracks occupy 14½ feet of the street. There is a safety zone

in the west side of Woodward at this intersection, for southbound traffic, which extends north from the north line of Pingree avenue for a distance of 88 feet. The location is in a business district.

On September 19, 1939, at about 3 o'clock in the afternoon, plaintiff left her house east of Woodward, on the north side of Hague, and walked to the northeast corner of Woodward and Hague to take defendant's streetcar downtown. The afternoon was clear, sunshiny and dry. Plaintiff paused at the curb before crossing Woodward to the safety zone and looked in both directions. While standing at the curb plaintiff observed that there was no northbound traffic and that a southbound streetcar was just about opposite a drugstore at an intersection one block north. While still at the curb plaintiff waved her right hand and started to cross the street, walking "briskly," "fairly fast," or "sharply," straight across the street toward the safety zone. As plaintiff was crossing the street to the safety zone after leaving the curb, the streetcar was coming along the southbound rails at a speed of "between 30 and 35 miles per hour" and passed a southbound tractor-trailer vehicle near the north-end of the safety zone. The tractor-trailer was going 30 miles per hour when the streetcar passed it. Plaintiff continued across the street to the safety zone and did not pause anywhere along the way, "not one second." She went "right along fast" and did not change her pace from the time she left the curb until she was struck by the streetcar. When plaintiff was in the center of the street and before entering the west or southbound rails on which the streetcar was coming, she again waved her hand, kept it "half-way up" as she crossed the street, and then raised it again when she was in the center of the street.

There were some differences of opinion among the witnesses testifying for plaintiff as to the exact point where the streetcar passed the tractor-trailer unit, and as to how close the streetcar was to the plaintiff when she started to cross the southbound track in front of the streetcar. On direct examination, the driver of the tractor-trailer testified that the streetcar passed him before he got to the safety zone, and that until plaintiff got to the center of the street he was ahead of the streetcar. According to the testimony of this witness on cross-examination, the streetcar was less than 88 feet from plaintiff when she started to walk in front of it. He testified:

"As I approached the north end of the safety zone here in question the southbound streetcar started to pass me. When I first saw the lady I was approaching, that is, within a few feet, of the north end of the safety zone, and I saw Miss Davidson leave the curb and walk briskly. She had left the curb before the streetcar started to pass me. We were traveling at approximately the same speed, so we were traveling more or less side by side. The streetcar was just starting to pass me at that time, and the front of the streetcar was about at the front end of my truck. I continually saw Miss Davidson from the time she left the curb until the streetcar cut off my view when Miss Davidson was *between the north and southbound tracks. At that time the streetcar was two-fifths of the way into the safety zone.* A moment later I saw her when she was hit."

Accordingly to another witness, when plaintiff "got to the *tracks*" the streetcar was north of the 88-foot safety zone. The plaintiff herself was not clear as to how far distant the approaching car was when she entered the southbound track. On direct examination, she testified that when she got to the

center of the street and raised her hand the second time the streetcar "would be in front of the drugstore and a little past." On cross-examination, she testified:

"*Q.* Now, Miss Davidson, I have just one more question to clear up this matter: When you left the east curb here, you say you continued walking across the street?

"*A.* Yes.

"*Q.* And the second time that you raised your hand, you were either on the southbound rail or close to it?

"*A.* Going right across.

"*Q.* Yes. You did not stop?

"*A.* Didn't stop.

"*Q.* So at the time you waved the second time, you were in such a position that if you stopped there you would have been hit by this streetcar, is that right, if you stood there? * * *

"*A.* If I would stay long enough, anyone would have.

"*The Court:* Well, if you stopped when you held up your hand, stopped right there, where would you be?

"*The Witness:* I would have been there—

"*The Court:* Well, just imagine that you stayed right there, never moved from that spot, would the streetcar have hit you or not?

"*The Witness:* Yes, if I stayed there, yes."

The importance of this testimony becomes apparent when we consider plaintiff's claim that the motorman had sufficient time to avoid an accident when he should have observed that plaintiff had placed herself in a position of peril. It is uncontroverted that the motorman did not see plaintiff until after she was struck.

Before entering upon the southbound track, plaintiff either saw, or would have seen had she looked,

that the streetcar was approaching the place where she was about to cross in front of it, at 30 to 35 miles per hour, an undiminished rate of speed. Plaintiff was struck by the streetcar as she was about to step clear of the danger point. The extreme right front corner of the streetcar struck her on the hip and she was thrown violently to the pavement.

It was admitted by defendant's employee immediately after the accident that he did not see the plaintiff at all before she was struck. If he did not see her at all, obviously he did not see her attempt to signal for a stop as she stepped from the curb, nor as she was about to cross the southbound track. It is a fair inference that the motorman's attention was directed to his right, and away from plaintiff, at the tractor-trailer that he was passing. The streetcar was traveling at a high rate of speed and the motorman was not observing conditions ahead. The motorman should have seen plaintiff and should have slowed down. He continued to move forward at 30 to 35 miles per hour, at undiminished speed, without maintaining a proper lookout ahead, went into the street intersection without seeing plaintiff at all although she signaled at the curb and as she crossed the street. For the purposes of this case, viewing the testimony and all reasonable inferences therefrom in the light most favorable to plaintiff, the negligence of the defendant was established by the proofs.

We find it necessary to agree with the conclusion of the trial court, that plaintiff was guilty of contributory negligence as a matter of law. While still at the curb she saw the rapidly approaching streetcar and hurried to cross the track in front of it and to the opposite safety zone in order to board the car. At 30 miles per hour, the streetcar was travel-

ing at the rate of 44 feet per second. When plaintiff started to enter the track to cross in front of it, 10 feet from safety, the car would hit plaintiff in approximately 2½ seconds if it continued at the same rate of speed. Assuming that plaintiff walked rapidly and did not hesitate, at the rate of 2½ miles per hour she would travel approximately 4 feet per second. From all the testimony, it is apparent that the accident occurred in less than 2½ seconds from the time she started to cross the track, the time it took for the streetcar to travel about 100 feet. Plaintiff apparently relied entirely on the belief that the motorman had seen her and would slow down. She testified:

"From the time I left the curb I did not pause anywhere along the way—'not one second.'

"Q. When you got in the center of the street, what did you do?

"A. Went right along and waved my hand. * * *

"Q. As to the streetcar, what was it doing?

"A. The streetcar must have been coming terrifically fast. * * *

"Q. And when you raised your hand the second time, did you see the streetcar at that time?

"A. Yes. * * *

"Q. Well, did you go on after raising your hand the second time, waving?

"A. Went right on, kept right on, never paused."

Plaintiff took the chance of going into a place of obvious danger without taking the precaution of observing whether she could cross in safety.

"A reasonably prudent man will not take a chance of streetcars slowing up to let him cross a street." *Public Administrator of the State of Michigan* v. *City of Detroit*, 234 Mich. 314.

When plaintiff approached the car track and gave the usual signal of her desire to become a passenger,

she had the right to assume that the streetcar would stop. However, this did not obviate the necessity of taking usual precaution before attempting to cross the track in front of the streetcar that (as plaintiff admits) showed no evidence of slowing down, and plaintiff had no right to continue the presumption that the car would stop when she observed that it was not slowing down. *Devore* v. *Rapid Railway Co.*, 235 Mich. 405. Plaintiff claims that this was a customary streetcar stop, and that plaintiff had the right to rely on the motorman observing the custom. We do not find from the record that this intersection was a customary stopping place except when the streetcar was stopped on signal. The motorman was negligent in failing to observe plaintiff's signal, but otherwise was not supposed to stop.

"While a pedestrian may rely, in crossing a streetcar track near its intersection with another track, on a custom or regulation to stop cars at a given place, the rule is not applicable to a decedent who, while engaged in conversation, attempted to cross in front of a car in plain view running at full speed, when a glance at it must have advised the deceased that it was not intended to observe the custom." *West* v. *Detroit United Railway* (syllabus), 159 Mich. 269.

"In an action against a street railway company for the wrongful death of plaintiff's decedent, evidence that decedent, a man 52 years of age, in good health, in broad daylight, started to cross a streetcar track, walking diagonally towards the approaching car which was in plain sight, less than 12 feet away, and running at a rate of speed not in excess of 6 miles an hour, *held,* sufficient to sustain the finding of the trial court that decedent was guilty of contributory negligence as a matter of law." *Griewski* v. *Ironwood & Bessemer Railway & Light Co.* (syllabus), 209 Mich. 10.

"Motorist who drove upon car track with full knowledge of an approaching streetcar without first reasonably assuring himself of being able to continue his course and cross in safety *held,* guilty of contributory negligence as a matter of law." *Rosenfeld* v. *City of Detroit* (syllabus), 274 Mich. 650.

"Deceased was walking in the country on the private right of way of defendant company, which operated a street and interurban railway. Seeing a car approaching four or five hundred feet away, he stepped outside the rails, put down between them a basket that he carried, and signaled the car to stop. It passed the usual stopping place or station without decreasing its speed of 15 to 18 miles an hour, and as it approached decedent he signaled a second time. The next station was about 1,500 feet away. Plaintiff's decedent stooped to pick up his basket when the car was 50 or 60 feet distant, and was struck and killed. A single step away from the track would have removed him from danger; he was in plain view of the car, facing it, and saw it approaching. *Held,* that deceased was guilty of contributory negligence." *Levy* v. *Houghton Street Railway Co.* (syllabus), 164 Mich. 572.

See, also, *Benedict* v. *City of Port Huron,* 124 Mich. 600; *Cardinal* v. *Railway Co.,* 174 Mich. 22; *Beach* v. *City of St. Joseph,* 192 Mich. 296; *Evans* v. *Orttenburger,* 242 Mich. 57; *Johnson* v. *Railroad Co.,* 246 Mich. 52; *Rice* v. *Goodspeed Real Estate Co.,* 254 Mich. 49; *Harrison* v. *Eastern Michigan Motor Bus Co.,* 257 Mich. 329; *Blankertz* v. *Mack & Co.,* 263 Mich. 527; *Pentz* v. *Wetsman,* 269 Mich. 496; *Johnson* v. *City of Pontiac,* 276 Mich. 103.

However, plaintiff claims the right to recover, even if plaintiff was guilty of contributory negligence as a matter of law, on the theory that defendant was guilty of subsequent negligence after the motorman should have discovered plaintiff's peril.

In order to apply the doctrine of subsequent negligence (also called discovered negligence, gross negligence, wilful, wanton or reckless misconduct, discovered peril, last clear chance—see *Gibbard* v. *Cursan,* 225 Mich. 311), plaintiff's negligence must have put her in a position of danger, must have ceased to operate as the proximate cause of the accident, the defendant must have discovered plaintiff's peril or should by the exercise of ordinary care and diligence have discovered plaintiff's peril, the defendant must have had sufficient time and ability to avoid resulting harm by ordinary care and diligence in the use of the means at hand, and failed or omitted to use such care and diligence to avert the threatened injury. The proof should be clear and convincing that the defendant had discovered the plaintiff's peril, or should have done so by the exercise of ordinary care and diligence, and by the use of the means at hand have had time to avert the threatened injury. Under the above circumstances, the subsequent negligence of the defendant has been held to be the proximate cause of the injury, that the antecedent (although continuing) negligence of the plaintiff is no longer the proximate cause, and that therefore the contributory negligence of the plaintiff would not bar recovery. This rule has been announced in substance, and at various times in part, in numerous decisions of this court, with occasional variations in language as applied to particular facts and circumstances. *Griewski* v. *Ironwood & Bessemer Railway & Light Co., supra; Gibbard* v. *Cursan, supra; Howell* v. *Hakes,* 251 Mich. 372; *Willett* v. *Smith,* 260 Mich. 101; *Goss* v. *Overton,* 266 Mich. 62; *Sherman* v. *Yarger,* 272 Mich. 644; *Wells* v. *Oliver,* 283 Mich. 168; *Wilson* v. *Michigan Interstate Motor Freight, Inc.,* 286 Mich. 99; *Beaulieu* v. *City of Detroit,* 293 Mich. 364; *Routt* v.

*Berridge,* 294 Mich. 666; *Agranowitz* v. *Levine,* 298 Mich. 18; *Sloan* v. *Ambrose,* 300 Mich. 188; *Mallory* v. *Pitcairn, ante,* 40.

The negligence of the defendant was concurrent with, not subsequent to, plaintiff's contributory negligence; and for that reason plaintiff cannot recover damages for the injury.

"Since there is no exact standard of measurement by which to determine where negligence ends and wilful or wanton misconduct begins each case must be decided on its own facts (1 Comp. Laws 1929, § 4648)." *Sherman* v. *Yarger* (syllabus), *supra.*

See, also, *Gibbard* v. *Cursan, supra.*

Plaintiff has failed to show that the plaintiff's negligence had ceased to operate as the proximate cause of the accident.

"Where, after decedent entered the danger zone, there elapsed less than two seconds before he was struck by the car, the doctrine of subsequent negligence is not applicable, there being insufficient time for the brain and body to function properly to stop the car in time to avoid the injury." *Griewski* v. *Ironwood & Bessemer Railway & Light Co.* (syllabus), *supra.*

Where both parties are guilty of concurrent negligence as a matter of law, the doctrine of subsequent negligence has no application. *Howell* v. *Hakes, supra.*

"Where, in action and cross action for damages caused by automobile collision at street intersection, it appears that both parties were negligent and that their negligence continued up to moment of impact, negligence of both parties was concurrent, rendering doctrine of subsequent negligence inapplicable and barring right of either to recover." *Szost* v. *Dykman* (syllabus), 252 Mich. 151.

"Upon appeal from directed verdict and judgment for defendant city, operating a street railway system, in action by motorist who drove upon tracks and stopped in front of approaching streetcar, pivotal question is whether physical facts are such as to render untenable plaintiff's theory that accident was proximately caused by motorman's failure to stop streetcar after he should have discovered plaintiff's peril.

"A motorman is not under duty to bring his streetcar under complete control whenever he observes an automobile crossing the track.

"Subsequent negligence may not be imputed to a litigant merely because of his failure to anticipate unlawful action on the part of the one charging him with such negligence.

"In action by motorist who, in attempting to cross from private driveway on north side of street to drive in eastbound lane, was forced to stop on eastbound car track in front of approaching streetcar because of fast eastbound motor traffic, record *held,* to justify directed verdict and judgment for defendant city where there is no showing that motorman could have brought streetcar to a stop in time to have avoided collision after he discovered or should have discovered plaintiff's peril." *Rosenfeld* v. *City of Detroit* (syllabi), *supra.*

In the case at bar the motorman was not called upon to testify. Plaintiff's proofs showed that the streetcar ran far enough down the next block (south) so that two other streetcars which came up and stopped behind it cleared the Pingree-Hague intersection. There was no proof that the motorman could have avoided the accident with the means at hand when he should have discovered that plaintiff intended to cross the track in front of the streetcar. An attempt was made to obtain a new trial for the purpose of presenting such testimony.

Plaintiff contends that the court erred in refusing to grant her motion for a new trial on the ground of

newly-discovered evidence. On the showing made, there was no abuse of discretion in denying the motion. There was no showing of diligence in attempting to discover the new evidence, which is a prerequisite to granting a new trial on such grounds. *Grossman* v. *Langer*, 269 Mich. 506.

Affirmed.

CHANDLER, NORTH, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred with BOYLES, C. J. WIEST, J., concurred in the result.