MORRISON v. HALL.

1. Negligence—Doctrine of Subsequent Negligence.

In order to apply the doctrine of subsequent negligence so as to permit recovery by plaintiff, his negligence must have placed him in a position of danger and then ceased to operate as a proximate cause, and it must be clearly proved that defendant must have discovered, or by the exercise of ordinary care and diligence should have discovered, plaintiff's peril and have had sufficient time and ability to avoid resulting harm by ordinary care and diligence in the use of the means at hand and failed to use it to avert the threatened injury.

2. Appeal and Error—Motion for Directed Verdict—Evidence.

In passing upon a motion for a directed verdict made by the defendant, the Supreme Court views plaintiff's evidence in its most favorable light.

3. Automobiles—Bicycles—Contributory Negligence as a Matter of Law.

In action by administrator of estate of 16-year-old boy who had been riding with a companion bicyclist west at 5 p. m. late in September on a clear, dry day down a hill on a road paved 20 feet wide with blacktop when overtaken by defendants' truck whose driver had blown horn some 150 to 200 feet to the rear of the bicyclists, where record showed the fatal collision occurred at or near south edge of road, that decedent's companion had called to decedent shortly after horn was blown, and that decedent who had started northwesterly from near center line then proceeded southwesterly to point of collision, decedent was guilty of contributory negligence which had not ceased to operate as a proximate cause of the accident, hence recovery should have been denied as a matter of law.

Contributory negligence as a matter of law, see 2 Restatement, Torts, §§ 432, 463, comment b, 464, comment a, 465, 466, comment g; standard of conduct to which plaintiff must conform, §§ 283–285, 463, 464.

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE—DIRECTED VERDICT—
   INSTRUCTIONS.
   Where defendants' motion for a directed verdict should have
   been given but jury gave verdict of no cause of action, claimed
   error in instructions given by trial court are not discussed.

Appeal from Alcona; Dehnke (Herman), J.   Sub-
mitted April 4, 1946.   (Docket No. 48, Calendar No.
43,313.)   Decided May 13, 1946.

Case by Rufus Morrison, administrator of the
estate of Marvin Warren Morrison, deceased, against
Charles F. Hall and another, doing business as Har-
risville Grain & Lumber Company, for damages re-
sulting from death of decedent after being struck
by defendants' truck.   Verdict and judgment for
defendant.   Plaintiff appeals.   Affirmed.

*Vincent D. Ryan,* for plaintiff.

*William R. Barber,* for defendants.

SHARPE, J.   This action of trespass on the case
was brought by plaintiff as administrator of the
estate of Marvin W. Morrison, deceased, to recover
damages sustained by decedent on September 22,
1944, by reason of having collided with a motor truck
owned by defendant Harrisville Grain & Lumber
Company and driven by Harry Dunn.

At about 5 o'clock in the afternoon on the day
mentioned, plaintiff's decedent, aged 16 years, and
Arnold Ward, aged nearly 15 years, were riding
bicycles and proceeding west on highway M-72 in
Alcona county, Michigan.   Highway M-72 is paved
with blacktop and is about 20 feet wide.   There are
shoulders on each side of the road.   The day was
clear, the blacktop was dry and there was no other

traffic on the road. The boys had just gone over a hill and were continuing down on the west side. Arnold Ward was riding his bicycle on the north side of the blacktop and about three feet from the north edge. Marvin Morrison was riding his bicycle on the south side of the blacktop about three feet from its south edge. The top of the hill they had just come over was approximately 1,000 feet to the east. After the boys had ridden about 600 feet from the crest of the hill, Marvin Morrison started to zigzag back and forth across the highway. Each time he made a zigzag he crossed the center line of the highway.

About this time a truck owned by Harrisville Grain & Lumber Company and driven by Harry Dunn was proceeding in a westerly direction. When the driver came to the top of the hill and thereafter, the boys were in plain sight. The truck continued down the hill until it was a distance of 150 to 200 feet to the rear of the boys when its driver blew its horn. At this time the truck was on the north side of the blacktop and the boys were at the foot of the hill. When the horn was blown, Arnold Ward pulled over to the north side of the blacktop and at the same time "hollered" to Marvin.

"We were just about to the bottom of the hill when Marvin—he was still zigzagging back and forth across the road—and I heard a horn blow and I looked back and there was a truck coming about maybe, from 150 to 200 feet back, and Marvin was just coming to the northwest to the center line from the south edge of the blacktop.

"I hollered and turned off when I heard the horn blow and I looked back and seen the truck and I pulled off to the north side of the blacktop where I continued riding my bike on the north side, and when I hollered to Marvin, he turned so he was headed in a southwesterly direction. When I hol-

lered he was coming northwest and he started to turn just as soon as I hollered to him—he must have seen that truck because he turned back to the south and started southwesterly toward the south edge of the blacktop. When he made the turn for the southwest, he had not quite come to the center line of the pavement.

"Well then the truck turned off to the south edge and Marvin was just about to the edge of the pavement—maybe off a little to the south edge—when he was hit—and he was picked off from the bike, and the bike tipped up forward, the back wheel tipped up and came maybe down on its handle bars, so that the back of the bike lay to the north and the front of the bike lay to the south on the pavement—on the blacktop—it threw him for about 50 feet and he hit maybe 3 feet from the south edge of the pavement, and rolled him like—sort of a skid—and went about 40 or 50 feet further and then rolled off 2 or 3 feet to the south edge of the pavement. * * *

"After the horn on the truck blew I could hear the truck coming, making a sort of a humming noise, like."

It was stipulated that the injured boy was taken to a doctor's office in Alpena and then taken to the Alpena Hospital where he died at 7:15 that night; and that from the time of the accident until his death there was no conscious pain or suffering.

The cause came on for trial and at the close of plaintiff's proofs, defendants' counsel made a motion for a directed verdict, the substance of which was that plaintiff's decedent was guilty of contributory negligence; and that the driver of the truck being confronted with a sudden emergency did everything in his power to avoid the accident. The trial judge withheld decision on the motion and submitted the cause to a jury. The jury returned a verdict of no cause of action.

Thereafter plaintiff filed a motion for a new trial alleging that the trial court was in error in refusing to allow plaintiff to show the speed that defendant Dunn was driving the truck about one mile east of the place of the accident; and that the trial court was in error in instructing the jury and in failing to give plaintiff's requested instructions.

In his opinion denying the motion for a new trial the court said:

"I am unable to fix any point at which it could, within reason, be said that the decedent's contributory negligence ceased to operate as an active contributing factor in the course of the events under investigation. * * *

"It is admitted that the defendant sounded his horn, and obvious that the noise of the truck, in and of itself, particularly if it was coming at such an excessive rate of speed as claimed by plaintiff, must have been heard by the decedent, there being no other traffic upon the highway in that vicinity, or anything else to distract their attention. Plaintiff's own evidence shows that the defendant, in seeking to pass, not only left the right half of the highway entirely clear, but in his attempts to avoid an accident got far over on the shoulder towards the ditch on the left-hand side of the road; and that the accident occurred because the deceased negligently (instead of continuing back towards his proper position) was traveling upon what for him was the wrong side of the highway, and thereby assuming the risks of that experiment, as has been frequently held. * * *

"The fatal weakness of plaintiff's case * * * lies in his inability to prove, from both the factual and legal angle, that decedent was free from contributory negligence which continued to operate as an active element until the time of the collision. * * * On that basis, defendants were entitled to a directed verdict as a matter of law."

Plaintiff appeals and urges that the trial court was in error in instructing the jury upon the question of subsequent negligence and for the further reasons stated in his motion for a new trial.

Of first importance is decision of defendants' motion for a directed verdict made at the close of plaintiff's proofs and at the close of all proofs. Decision on this motion must be made in harmony with our decision in *Davidson* v. *City of Detroit,* 307 Mich. 420, 430, where we said:

"In order to apply the doctrine of subsequent negligence (also called discovered negligence, gross negligence, wilful, wanton or reckless misconduct, discovered peril, last clear chance—see *Gibbard* v. *Cursan,* 225 Mich. 311), plaintiff's negligence must have put her in a position of danger, must have ceased to operate as the proximate cause of the accident, the defendant must have discovered plaintiff's peril or should by the exercise of ordinary care and diligence have discovered plaintiff's peril, the defendant must have had sufficient time and ability to avoid resulting harm by ordinary care and diligence in the use of the means at hand, and failed or omitted to use such care and diligence to avert the threatened injury. The proof should be clear and convincing that the defendant had discovered plaintiff's peril, or should have done so by the exercise of ordinary care and diligence, and by the use of the means at hand have had time to avert the threatened injury."

In passing upon a motion for a directed verdict made by defendant we must view plaintiff's evidence in its most favorable light. It is an admitted fact that plaintiff's decedent was negligent in riding his bicycle in the manner in which he did on this particular occasion. The record shows that when defendants' truck was from 150 to 200 feet to the rear of the boys, the driver of the truck blew his horn.

The Ward boy heard the horn, looked back and saw the truck, then pulled over to the north side of the highway. At the same time he called to decedent, who was then coming in a northwesterly direction, but had not quite come to the center line of the pavement. After the Ward boy called, decedent turned back to the south and started southwesterly towards the south edge of the blacktop. The record also shows that when the truck turned off to the south edge of the blacktop, decedent was also at the south edge of the blacktop and at this point the two vehicles collided. When the collision occurred, the front wheels of the truck were three or four feet off of the blacktop while the rear wheels of the truck were still on the blacktop. The position of the truck would indicate that its driver was attempting to turn to the south side of the highway in order to pass the boys; and that the truck driver and decedent started towards the south side of the highway at approximately the same time. The record does not show how far the truck was in the rear of the boys when its driver started towards the south side of the highway, but the record does show that the collision occurred while the rear wheels of the truck were still on the blacktop.

In the examination of the record, we are convinced that the negligence of decedent continued until the fatal collision. We are also convinced that the truck driver did not and could not have discovered decedent's peril in time to have avoided the accident. Under the circumstances in this case decedent's negligence was a proximate cause of the accident. In our opinion plaintiff has failed to show that decedent's negligence had ceased to operate as the proximate cause of the accident. In view of our conclusion, the claimed error in instructions given by the trial court needs no discussion. Defendants'

motion for a directed verdict should have been granted, but in view of the fact that the verdict of the jury resulted favorably to defendants, the judgment of no cause of action is affirmed, with costs to defendants.

BUTZEL, C. J., and CARR, BUSHNELL, BOYLES, REID, NORTH, and STARR, JJ., concurred.