LEEMON v LEEMON

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—JURY QUESTION—QUESTIONS OF LAW.

Negligence and contributory negligence are in most cases jury questions and are considered to be questions of law only when the facts require all reasonable men to draw the same conclusion.

2. NEGLIGENCE—WRONGFUL DEATH—LAST CLEAR CHANCE—SUBSEQUENT NEGLIGENCE—DISCOVERED PERIL—CONTRIBUTORY NEGLIGENCE—JURY QUESTION—ALTERNATIVE THEORIES.

An admission of contributory negligence is not an essential element of an attempt to invoke the last clear chance doctrine; a plaintiff in a wrongful death case may go to the jury on the alternative theories that the decedent was free from contributory negligence but, if found guilty thereof, that he was excused by defendant's subsequent negligence.

3. NEGLIGENCE—SUBSEQUENT NEGLIGENCE—LAST CLEAR CHANCE—DISCOVERED PERIL—ELEMENTS.

A determination of subsequent negligence, after a plaintiff's negligence has placed him in a position of peril, depends upon a showing that the defendant did discover or by the exercise of ordinary care should have discovered that the plaintiff was helpless to avoid the impending harm, and that such discovery was made or should have been made in time to avoid the harm by means at hand.

4. NEGLIGENCE—SUBSEQUENT NEGLIGENCE—LAST CLEAR CHANCE—DISCOVERED PERIL—CONCURRENT NEGLIGENCE—PROXIMATE CAUSE.

A plaintiff may not recover under the subsequent negligence doctrine if his negligence continued to the moment of the accident, was concurrent with the defendant's negligence, and was a proximate cause of the injury at issue.

REFERENCES FOR POINTS IN HEADNOTES
[1] 57 Am Jur 2d, Negligence §§ 6, 295–302.
[2–6] 57 Am Jur 2d, Negligence §§ 388, 399.
　Doctrine of last clear chance. 119 ALR 1041 s. 171 ALR 365.

5. NEGLIGENCE—SUBSEQUENT NEGLIGENCE—LAST CLEAR CHANCE—DIS-
   COVERED PERIL.

   Subsequent negligence or last clear chance implies thought,
   appreciation, mental discretion, and the lapse of sufficient time
   to act effectually upon the impulse to save another from injury.

6. NEGLIGENCE—SUBSEQUENT NEGLIGENCE—LAST CLEAR CHANCE—DIS-
   COVERED PERIL—INSTRUCTIONS TO JURY—JURY QUESTION.

   An instruction on the doctrine of subsequent negligence should
   have been submitted to the jury so as to allow the jury to
   determine whether or not contributory negligence, if present,
   had ceased to operate as a proximate cause of an accident
   where the evidence can reasonably be found to justify such an
   instruction when viewed most favorably to the plaintiff.

Appeal from Baraga, Stephen D. Condon, J. Submitted Division 3 October 11, 1974, at Marquette. (Docket No. 18305.) Decided November 7, 1974.

Complaint by Myra C. Leemon, administratrix of the estate of Thomas J. Leemon, deceased, against Deborah Leemon for damages for wrongful death resulting from a pedestrian-automobile accident. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*McLean & McCarthy,* for plaintiff.

*Clancey, Hanson, & Vielmetti,* for defendant.

Before: ALLEN, P. J., and J. H. GILLIS and McGREGOR, JJ.

ALLEN, P. J. This appeal involves a wrongful death action brought by a mother, as administratrix of her husband's estate, against her daughter for the accidental death of the father. The jury returned a verdict of no cause of action from which plaintiff appeals as of right.

We find only one issue of substantive impor-

tance. The remaining four claims of error and our response thereto are summarized in the footnote below.[1] Did the trial court err reversibly by ruling that plaintiff could not utilize the theory of subsequent negligence unless plaintiff first conceded on the record that decedent had been contributorily negligent, and by refusing to instruct the jury regarding subsequent negligence when plaintiff refused to so concede? This issue arose when, at the conclusion of all proofs, plaintiff requested a jury instruction (instruction no. 36) on subsequent negligence and directed the court's attention to the fact that Count II of plaintiff's pleadings contained a charge of subsequent negligence or, as it is sometimes called, gross negligence or last clear chance.[2] In the absence of the jury, the trial court expressed the view that, "as the court understands the law * * * in order to invoke the doctrine, plaintiff must confess his own negligence which placed him in a dangerous position". When counsel refused to so confess, the court stated it would not give the requested instruction. Despite appel-

[1] Plaintiff asserts error of the trial court both in allowing the issue of defendant's negligence and plaintiff's contributory negligence to go to the jury. As to both, it is only when the facts require all reasonable men to draw the same conclusion that the issue is considered to be one of law. In most cases negligence and contributory negligence are jury questions. *Marietta v Cliffs Ridge, Inc,* 385 Mich 364, 370; 189 NW2d 208 (1971). The record contains testimony on each issue sufficient to create a disputed question properly left with the jury for determination. Plaintiff also claims error in the trial court's refusal to give requested instructions 33 (rights of a pedestrian vis-a-vis a motorist), 23 (the specific duties of a motorist in backing up) and 24 (effect of a driver's breach of duties). Sub-paragraph (c) and (d) of 33 is argumentative. Sub-paragraph 5 of 23 and 24 contain statements of a duty to sound the horn or give other warning before backing up, which duty may not exist as applied to the facts in the instant case. The court did give the substance of all three instructions by way of a general charge. Therefore, we find no reversible error.

[2] *See LaCroix v Grand T W R Co,* 379 Mich 417, 423; 152 NW2d 656 (1967), and *Papajesk v Chesapeake & O R Co,* 14 Mich App 550, 555; 166 NW2d 46 (1968), where the above terms are used synonymously with the court pointing out that "gross negligence" when so used is not to be confused with wanton, willful or reckless misconduct.

lee's protestations to the contrary we find the refusal to give instruction 36 was properly preserved for review.[3] Disposition of the issue thus posed requires a statement of the skeletal testimony of the two eyewitnesses who testified as to the circumstances of the accident.

According to this testimony, which comprises only 42 pages of the record, about 11 am, August 1, 1970, decedent, his nephew Pat Harrington, then age 14, and the defendant, Deborah, then age 16, left L'Anse in decedent's 1970 Chevrolet pickup truck to pick up building materials at a lumber yard in Skandia. The truck was equipped with automatic transmission, side-view mirrors on both the right and left sides, and a standard rear-view mirror. At Skandia, the truck was loaded under decedent's supervision with wall board, paneling and metal stripping. The load protruded about four inches from the sides of the truck and hung over some four inches on the rear. The tailgate was left down for the return trip. On the way back deceased stopped and asked Pat to adjust the right side mirror so that deceased could see traffic from behind. Deceased was driving, Deborah sat in the middle, with Pat to the right of Deborah. Near Bovine, a community just south of L'Anse, some of the metal stripping fell off the truck. Deceased pulled over, stopping the truck on the shoulder of the highway. Pat opened the door, telling his uncle he would run back and get the stripping. Deceased opened the left door and stepped out. At this point the testimony becomes conflicting as to exactly what deceased said as he emerged from the cab.

[3] Plaintiff's counsel stated his objections to the court's ruling both at the time of the ruling and again immediately following the court's refusal to give instruction 36 citing as his reason for objecting the case authority and the fact the record contained evidence justifying the charge. We therefore conclude that plaintiff complied with GCR 1963, 516.2.

Pat testified that as deceased was getting out he said to Deborah, "Back up the truck when I say." Deborah, on cross-examination under the statute first said she did not remember her father's exact words but later, on direct examination, testified her father only told her to back up the truck.[4] Pat claimed he had run back on the highway 25 to 50 yards when,

"I heard the truck motor roar and then my uncle yelled wait. I turned my head and seen him bent over behind the truck and at the time the truck had pushed him over on the ground. Then, the truck had backed up and then the left side of the truck went up in the air and then back down and stopped. At that time I was going back yelling to my cousin Deborah.

"*Q.* Then what happened?

"*A.* The truck then proceeded forward, ran over him again and my uncle came rolling out from underneath."

Deceased was struck by the left rear wheel which was on the highway, with deceased bent over facing the shoulder, standing on the shoulder about a foot from the highway edge. Deborah claimed that before backing up she stuck her head out of the left door and looked but didn't see her father, but further stated that in so doing she

---

[4] "*Q.* Speaking of your deposition again, do you remember answering questions of Mr. McCarthy's, he asked you Debbie, might your father have told you something like back up the truck when I tell you to, do you remember anything like that? And you answered I just remembered he said we'll go get it and you back it up. Do you remember that?

"*A.* Yes.

"*Q. Is that the way you remember it now?*

"*A. That's correct.*

"*Q. What I'm getting at is this, do you recall him telling you to stay where you are until he told you to come back or on the other hand did he just say back the truck up?*

"*A. Well it was just like a mix-up and all, cause I was going to go too and get the stuff, and he said no you stay here and that and back it up. That's how I remembered it.*"

could see only up to the white (edge) line of the pavement and could not see the shoulder or behind.

"*Q.* Do you remember at your deposition Debbie you were asked how you could see with the mirrors and you said neither the mirror in the cab or the side mirrors were able to see with or that you were not able to see with the load on the truck, do you recall that?

"*A.* Yes.

"*Q.* That's the way it was in any——

"*A.* Yes, well you couldn't see, well like I'm not really sure cause how much I looked, you know, I thought he was behind there I just thought he was with Pat.

"*Q.* But in any event he told you to back up the truck?

"*A.* Yes."

She testified that when she backed up she thought her father was quite a ways behind her, that she did not hear her father call "wait" or hear Pat's call, that when she heard the thud she thought she had hit a "box or something". Both Deborah and Pat agreed that to get the heavily loaded truck moving in reverse required pushing down hard on the accelerator. Deborah had driver's training, obtaining her license about a month prior to the accident. She had driven the truck on several occasions but only once when it had a heavy load. There was no testimony at all as to how far the truck had moved in reverse gear before striking decedent. Importantly, the record is conflicting as to whether Deborah could not see through either side mirror (as appears in the deposition) or whether she did not fully look in the mirrors (as suggested in response to questioning at trial).

The trial court's interpretation of the doctrine of subsequent negligence followed the minority rule

and was clearly erroneous. The exact issue was decided in *St. John v Nichols,* 331 Mich 148, 153, 156; 49 NW2d 113 (1951), where the court held:

> "Plaintiff refused to plead or concede decedent's contributory negligence and contended for the right to go to the jury on the alternative theories that decedent was free from contributory negligence but, if found guilty thereof, that he was excused therefrom by defendants' subsequent negligence. In that contention plaintiff was correct." * * *
>
> "That right of plaintiff to recover under either of those 2 sets of circumstances the court may not defeat by requiring her, at her peril, to gamble on whether the jury might prefer the theory of decedent's freedom from contributory negligence or that of defendants' subsequent negligence."

Also, 25 ALR2d 254, 289 notes:

> "However, the majority of the courts passing upon the question have held that an admission of contributory negligence is not an essential element of an attempt to set up a cause of action under the last clear chance doctrine."

However, the trial judge's error would not, ipso facto, call for a new trial if the record, construed in a light most favorable to the plaintiff, fails to set forth a factual situation permitting the doctrine of subsequent negligence. The key question is whether the abbreviated testimony in this case reasonably can be found to justify a subsequent negligence charge.

To establish a case of subsequent negligence, plaintiff would have to show that plaintiff decedent's negligence had placed him in a position of peril, that decedent's negligence had thereafter ceased to operate "as an efficient cause of the pleaded injury", that Deborah Leemon, driver of

the truck and defendant herein "could and should have discovered the * * * [decedent's] peril in time to avoid such injury by the employment of safe means at ready hand", and that she failed "to so discover and act as would a person exercising due care under like circumstances". *Shafkind v Kroll,* 367 Mich 42, 45–46; 116 NW2d 58, 60 (1962). See also *Brinks v Chesapeake & O R Co,* 398 F2d 889, 891 (CA 6 1968) and *Ruotsala v Holzhauer,* 24 Mich App 571, 575–576; 180 NW2d 636 (1970), *lv den,* 383 Mich 823 (1970). A proper combination of time and distance is required to allow plaintiff to first understand the danger and then take preventive action.

"Determination thereof [subsequent negligence] by such trier or triers always depends on receipt of proof tending directly or by proper inference to show that the defendant did discover, or by the exercise of ordinary care should have discovered, that the plaintiff was helpless to avoid the impending harm, and that such discovery was made or should have been made in time to avoid such harm by means at hand. Invariably, the question involves fact elements of time and distance. Where, as here, allotted time and distance unite in providing that interval which reasonably calls for comprehension and preventive action, the doctrine rightfully comes into play for jury consideration." Dunn v Detroit, 349 Mich 228, 235; 84 NW2d 501 (1957).

However, if plaintiff's decedent's contributory negligence was concurrent with the negligence of his daughter, the subsequent negligence doctrine is inapplicable, and may not be invoked to excuse decedent's conduct. *LaCroix v Grand T W R Co,* 379 Mich 417, 424; 152 NW2d 656 (1967). *Morrison v Hall,* 314 Mich 522, 528–529; 22 NW2d 838 (1946), said that the question of subsequent negligence should not have gone to the jury, and that a directed verdict should have been granted, where

plaintiff failed to show that defendant's negligence had ceased to be a proximate cause of the accident. See also 17 Michigan Law & Practice, Negligence, § 83, p 463, wherein it is stated that plaintiff may not recover if his negligence "continued to the moment of the accident", was concurrent with defendant's negligence, and was a proximate cause of the injury at issue. *Davidson v Detroit*, 307 Mich 420, 430, 12 NW2d 413 (1943), noted that defendant, "by the use of means at hand [should] have had time to avert the threatened injury". The accident involved therein apparently occurred in less than 2-1/2 seconds from the time plaintiff began to cross the streetcar track, during which time the streetcar was able to travel 100 feet. 307 Mich 420, 427. The evidence failed to show that the streetcar operator could have avoided the accident, *i.e.,* the proof failed to show that the streetcar operator could have stopped the train within the time and distance involved. 307 Mich 420, 432. In *Griewski v Ironwood & Bessemer Railway & Light Co,* 209 Mich 10, 17–18; 176 NW 439 (1920), the court felt that the failure to act during a time period "of at most a single second * * * " did not justify the application of the doctrine of subsequent negligence, and said:

"An appreciable time must elapse before the brain can act upon the body; a further appreciable time must elapse during which the muscular movement of body performs the necessary functions * * * ."

Plaintiff's decedent had stepped in front of the moving streetcar about 12 feet in front thereof, and the failure of the streetcar operator "to act during the lapse of a fraction of a second or at most a single second * * * " was not such a failure as would justify the application of subse-

quent negligence. 209 Mich 10, 19–20. Thus, subsequent negligence, or last clear chance, "implies thought, appreciation, mental direction, and the lapse of sufficient time effectually to act upon the impulse to save another from injury". 57 Am Jur 2d, Negligence, § 401, p 817.

Assuming, arguendo, that plaintiff's decedent had negligently loaded the pickup truck so as to obstruct the driver's vision, and that decedent was negligent in allowing his daughter, who was relatively inexperienced in driving a loaded pickup truck, having done so only once, to assume the driver's position, without adjusting the side-view mirrors for the new driver, we must examine the facts to determine whether decedent's contributory negligence, as a matter of law, continued thereafter, or whether at most there was a question of fact presented so as to allow the jury to determine whether or not decedent's contributory negligence had ceased to operate as a proximate cause of the accident.

Viewing the evidence favorably to plaintiff, decedent told his daughter to "[b]ack up the truck when I say". He then proceeded to a point on the road some distance to the rear of the vehicle. His nephew, Pat, after having the time to proceed some 25 to 50 yards to the rear of the vehicle, heard the truck engine roar, turned, and heard decedent yell "wait". At this point decedent was bent over. Defendant testified that she was unsure as to whether she had looked in the rear-view mirror, although such an act might have been fruitless in view of the load in the rear of the truck. However, the evidence does show defendant could not see the shoulder, and said that she was unsure as to how much time she spent looking to the rear before backing the truck.

The facts herein obviously present a question for the jury as to defendant's negligence, and we find that the question of decedent's concurrent negligence, particularly in light of his advice to his daughter not to back up until he said to do so, was also a question which should have been submitted to the jury under a proper instruction on the doctrine of subsequent negligence. Although the record fails to disclose the exact distance traveled by the vehicle from the time it was engaged until the time it struck decedent, there was sufficient time involved for decedent's nephew to travel 25 to 50 yards beyond the truck, hear the engine roar, turn, see his uncle in a bent position and hear him yell "wait" before he was struck by the vehicle.

We conclude a sufficient question of fact was presented for a submissible jury question on the issue of subsequent negligence. This is not to hold that, as a matter of law, subsequent negligence actually existed but only to state that the facts in the meager record before us are so conflicting that the determination thereof should have been left with the jury. As stated before, the plaintiff properly preserved exceptions to the trial judge's failure to give the charge.

Reversed and remanded for a new trial, costs to plaintiff.

All concurred.