## DUNN *v.* CITY OF DETROIT.

1. NEGLIGENCE—SUBSEQUENT NEGLIGENCE.
    The negligence of an injured plaintiff will not defeat recovery from a negligent defendant if it be shown that the latter might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence.

2. STREET RAILROADS—AUTOMOBILES—CROSSING—SUBSEQUENT NEGLI-GENCE—EVIDENCE.
    Jury properly found defendant streetcar owner's southbound motorman was guilty of negligence subsequent to that of east-bound plaintiff motorist where latter had come to a stop on the track and southbound motor traffic prevented him from backing off the track and northbound streetcar and motor traffic prevented him from proceeding ahead, and the motorman for some 200 to 250 feet had at least 5 seconds in which to stop his car after observing plaintiff's position of peril.

REFERENCES FOR POINTS IN HEADNOTES
[1] 38 Am Jur, Negligence § 215 *et seq.*
[2] 5A Am Jur, Automobiles and Highway Traffic § 379.
[3] 5A Am Jur, Automobiles and Highway Traffic § 715.

3. SAME—FAILURE OF MOTORIST TO LEAVE TRAPPED CAR—QUESTION FOR JURY.

Whether or not plaintiff motorist was guilty of contributory negligence precluding recovery by failing to get out of his car after realizing he was "trapped" on streetcar tracks *held,* a question for jury under evidence presented.

4. SAME—AUTOMOBILES—SUBSEQUENT NEGLIGENCE—INSTRUCTIONS.

Instruction relative to jury's duty in ascertaining whether or not defendant streetcar owner's motorman was guilty of subsequent negligence in failing to avoid hitting "trapped" motorist *held,* fair to defendant, under record presented.

5. SAME—VERDICT—OVERWHELMING WEIGHT OF EVIDENCE.

Verdict for plaintiff motorist in action against streetcar owner *held,* not against the clear or overwhelming weight of the evidence.

Appeal from Wayne; Sweet (Lucien F.), J., presiding. Submitted April 5, 1957. (Docket No. 52, Calendar No. 47,057.) Decided July 31, 1957.

Case by William Dunn and State Farm Mutual Automobile Insurance Company, an Illinois corporation, subrogee, against the City of Detroit, Department of Street Railways, a municipal corporation, for personal injuries and property damages resulting when streetcar struck automobile trapped on right-of-way. Verdict and judgment for plaintiffs.

Defendant appeals. Affirmed.

*Moll, Desenberg, Purdy & Glover (Charles M. Bayer,* of counsel), for plaintiff Dunn.

*William J. Eggenberger (Walter J. Guth, Jr.,* of counsel), for plaintiff State Farm Mutual Automobile Insurance Company.

*James S. Shields* and *Leo A. Sullivan (A. Albert Bonczak,* of counsel), for defendant.

Plaintiffs sued defendant in the Wayne circuit for personal injuries and property damage resulting from a collision of defendant's streetcar with plaintiff Dunn's automobile. The case came to trial before court and jury, the Honorable Lucien F. Sweet, circuit judge presiding, and resulted in a verdict for plaintiffs in the total sum of $35,000. Motions by defendant for a directed verdict, for judgment notwithstanding verdict, and for new trial, were duly presented and denied. Judgment was entered on the verdict. Defendant appeals and urges that its motion for directed verdict—made at close of plaintiff's case and again at close of proofs—should have been granted for assigned reason that there is a want of proof in the record tending to show freedom of plaintiff Dunn from contributory negligence. In the alternative, defendant says it is entitled to a new trial on account of claimed error of jury instruction and claimed error of ruling that the jury's verdict was not contrary to clear or overwhelming weight of the evidence.

The trial judge filed a lengthy and carefully considered opinion supporting his determination that defendant's successive motions for directed verdict (and in consequence the motion for judgment notwithstanding verdict) were rightfully denied. The opinion gives us an accurate summary of facts requisite to consideration and decision of defendant's asserted claims of error and we quote the essence thereof as follows:

"The site of the collision is the intersection in the city of Detroit of Merton road, running east and west, and Woodward avenue, which runs north and south, and is at that point 164 feet wide from the east to west curb. The avenue is divided into 3 parts, the west 60 feet being paved for the use of southbound, and the east 60 feet for northbound vehicular traffic. Except at intersection, the middle

44 feet is enclosed within curbs and constitutes unpaved islands closed to automobile traffic on which are 2 sets of defendant's streetcar tracks, the west set being for southbound, and the east set for northbound streetcars.

"On the morning of May 18, 1953, plaintiff left his home for the purpose of going to his dental office which he maintained. He entered Woodward avenue from the west intending to cross the entire width thereof to enter Dakota, which is a street running east from Woodward avenue from a point somewhat south of the entrance of Merton on to Woodward from the west.

"Plaintiff stopped before entering Woodward avenue and made observations and saw a southbound streetcar and southbound motor vehicle traffic stopped for a light some 400 to 450 feet north of Merton avenue on Woodward avenue. He then proceeded across the westerly portion of Woodward avenue until he reached the streetcar tracks for southbound traffic, where he observed a northbound streetcar approaching on the streetcar tracks for northbound traffic and northbound motor traffic proceeding on the easterly portion of Woodward avenue.

"Plaintiff stopped his automobile on the southbound streetcar tracks and thereafter his car was struck by the southbound streetcar. The car was badly damaged and the plaintiff received serious personal injuries. * * *

"The plaintiff testified that he stopped on the southbound streetcar tracks and looked to the south 'to get clearance from the northbound traffic;' that he saw a northbound streetcar along with northbound motor traffic approaching; that the motor traffic was proceeding by the intersection; that he then turned his attention to the southbound motor vehicle traffic which was then moving and flowing back of his vehicle, and that he also observed the southbound streetcar which had started up and was 180 to 190 feet from the intersection. * * *

"It was the testimony of the plaintiff in the case at bar that he was on the tracks for a period of 7 to 9 seconds before he was struck, during which time he did make observations of the approaching streetcar on at least 2 occasions after observing it at the time that he stopped. Plaintiff also testified that it was impossible for him to back into the southbound lane of traffic because of the automobiles that were flowing behind his car and filling said lane, and that it was impossible for him to utilize the space between the southbound vehicle lane and the southbound streetcar tracks because of the length of his automobile. Plaintiff in the case at bar further testified that the approaching streetcar from the south going north was moving rather than stationary as in the *Bruer Case,** and that by reason thereof he could not drive forward on to the northbound streetcar track. He further testified that there was northbound automobile traffic beyond the northbound streetcar track, and that it would have been impossible for him to drive his car into a diagonal position in the area between the northbound streetcar track and the northbound traffic lanes of Woodward avenue. We see, therefor, that in the case at bar there is evidentiary support for the plaintiff's theory that he was trapped, and was in a position of peril from which he could not extricate himself. This was not the situation in the *Bruer Case*."

Judge Sweet summarized, as follows, his determination that the mentioned motions for directed verdict were properly denied:

"Viewing the testimony in the light most favorable to the plaintiff, we have a situation wherein the plaintiff's automobile could not be moved forward or backward without a collision being likely by reason of the north and southbound vehicular traffic and the northbound streetcar; where because of the length of plaintiff's vehicle it was impossible for him to back

---

* *Bruer* v. *City of Detroit*, 332 Mich 613.—REPORTER.

or go forward into the areas between the streetcar tracks and the vehicular traffic lanes; where the plaintiff observed the southbound streetcar approaching at such a distance as to permit the motorman thereof to bring it to a stop short of a collision with plaintiff's automobile. Under such circumstances can it be said as a matter of law that a reasonably careful and prudent person in the position that plaintiff was in would have left his automobile standing on the tracks and sought a place of safety on some other portion of Woodward avenue? It is the conclusion and opinion of this court that such a question must be answered in the negative, and that in viewing the record in this case in the light most favorable to the plaintiff it was for the jury to decide as a question of fact whether the plaintiff acted as an ordinarily careful and prudent man would and should have acted under like circumstances."

That the reader may immediately perceive the nature of the primary question before us, we record here that the case was submitted to the jury for determination whether defendant's motorman could and should have avoided the collision after having made timely discovery—if he did so discover—of the plaintiff motorist's position of peril on the rails ahead. The latter's guilt of antecedent negligence was assumed as a matter of law, and the jury was so instructed.

BLACK, J. (*after stating the facts*). This case focuses attention on that which is known to most writers upon the common law, and certainly to all law students, as the "jackass doctrine." The nickname, "with whatever implications it may carry" (Prosser On Torts [2d ed], § 52, p 291), finds its origin in the English case of *Davies* v. *Mann* (1842),*

---

* In *Davies* the plaintiff, having fettered the fore-feet of an ass belonging to him, turned it into a public highway; and at the time in question the ass was grazing on the off side of a road about 8 rods wide, when the defendant's wagon, with a team of 3 horses, coming down a slight descent, ran against the ass and knocked it down, and the

10 M & W 546 (152 Eng Rep 588, 19 Eng Rul Cas 190); 38 Am Jur, Negligence, § 216, p 902; 65 CJS, Negligence, § 136, pp 758, 759. The doctrine came to initial prominence in this country by means of another rail-crossing suit—the collision, as here, occurred in Detroit—originating in our Wayne circuit (*Grand Trunk R. Co.* v. *Ives,* 144 US 408 [12 S Ct 679, 36 L ed 485]). With respect thereto the supreme court said (p 429 of report):

"Although the defendant's negligence may have been the primary cause of the injury complained of, yet an action for such injury cannot be maintained if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured; subject to this qualification, which has grown up in recent years (having been first enunciated in *Davies* v. *Mann,* 10 M & W 546), that the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence" (citing authorities including Cooley on Torts [1st ed], 675).

Michigan recognizes and applies—in proper cases of course—this modification of the strict rule of contributory negligence (*Gibbard* v. *Cursan,* 225 Mich 311; *Davidson* v. *City of Detroit,* 307 Mich 420; *St. John* v. *Nichols,* 331 Mich 148). We usually refer to it as subsequent or discovered negligence (*Davidson* v. *City of Detroit, supra*). Little difficulty is experienced in phrasing it properly for jury instructions. As in all cases when the trial judge is moved for an instructed verdict on assigned ground of contributory negligence, the difficulty is

---

wheels passing over it, it was killed. Lord Abinger said that even if this ass was a trespasser, and "the defendant might, by proper care, have avoided injuring the animal, and did not, he is liable for the consequences of his negligence, though the animal may have been improperly there."

not so much with the rule as with its applicability—as a matter of law—to the facts of the particular case. The question resolves itself into one of determination of proximate cause or causes, and such is usually one of fact for the trier or triers of fact (1 Cooley On Torts (4th ed), § 50, pp 120, 121; Prosser On Torts (2d ed), § 50, p 281; *Spencer* v. *Phillips & Taylor,* 219 Mich 353; *Beebe* v. *Hannett,* 224 Mich 88; *Arvo* v. *Delta Hardware Co.,* 231 Mich 488). Determination thereof by such trier or triers always depends on receipt of proof tending directly or by proper inference to show that the defendant did discover, or by the exercise of ordinary care should have discovered, that the plaintiff was helpless to avoid the impending harm, and that such discovery was made or should have been made in time to avoid such harm by means at hand. Invariably, the question involves fact elements of time and distance. Where, as here, allotted time and distance unite in providing that interval which reasonably calls for comprehension and preventive action, the doctrine rightfully comes into play for jury consideration.

We are constrained to hold that the time and distance factors shown here are decisive of plaintiffs' right to jury determination of presence or absence of actionable negligence on the part of the motorman. Accepting for present purposes the motorman's testimony that the streetcar was traveling at the rate of 15 to 20 miles per hour when it was 200 to 250 feet away from the Merton road cross-over, and that he thereafter slowed the car on approach to Merton, and accepting for same purposes plaintiff Dunn's testimony that his automobile stood trapped on the tracks 7 to 9 seconds prior to impact, it was well within province of the jury to find that the motorman had ample time—considering his duty of constant lookout ahead and the extremely moderate speed of the streetcar—to perceive and act upon the

situation which, on favorable-to-plaintiff view, was unfolding before him. Given at least 5 seconds within which to perceive and safely act upon that which plaintiffs and their witnesses say was the motorist's visible position of peril ahead, the motorman was allotted more time for such action than is granted by amber warning (prior to stop) of the conventional traffic control signals with which he was regularly confronted as the car proceeded south on Woodward.

The motorman knew or should have known—on favorable view of course—that southbound automotive traffic released by the same traffic signal as had just released his streetcar was approaching the rear of the plaintiff motorist's standing automobile and that the latter could not for such reason be backed off the rails. He knew or should have known—on same view of the proofs—that a northbound streetcar was imminently approaching on the rails immediately to the front of the same automobile. By the same token he knew or should have known that convenient means were at hand to slow or stop the streetcar until the plaintiff motorist found a way of extrication. In such circumstances the common law asks no more of him than does the "slow" and "stop" command of a traffic control signal erected and operating by force of statute or ordinance.

Our recent decision in *Citizens' Mutual Auto Ins. Co.* v. *City of Detroit,* 348 Mich 329, recorded due augury of affirmance here. While the 2 cases are different in one respect—the question of the plaintiff motorist's negligence having been left to jury consideration in the one and instructed in the other—, the time and distance factors disclosed in both fairly called for jury determination of indicated issues of proximate cause or causes. In the case before us, as well as in *Citizens' Mutual,* the defendant city has cited with appropriate emphasis *Rosenfeld* v. *City of Detroit,* 274 Mich 650; and *Bruer* v. *City*

*of Detroit,* 332 Mich 613.   These cases cannot without resort to sophistry be distinguished, either from *Citizens' Mutual* or this case of Dunn.   Since both are at war with conclusions now announced—in *Citizens' Mutual* and Dunn—, they should be overruled. Ordered accordingly.

So far as concerns defendant's claim that the plaintiff motorist was guilty of contributory negligence on account of failure to get out of the automobile and thus remove himself from the path of danger, we are in accord with the trial judge's quoted disposition thereof.   The point was one for jury consideration and forms no basis for an instructed verdict against plaintiff Dunn.

Turning now to defendant's motion for new trial:

We discover no error in the charge of the court as claimed.   In view of flat instruction by the trial judge that the plaintiff motorist "was negligent in driving into Woodward avenue that morning," with consequent limitation of jury function to the question of timely discovery by the motorman of such instructed negligence, the charge so far as present criticism is concerned appears quite fair to defendant.

So far as concerns defendant's insistence that the verdict is contrary to clear or overwhelming weight of the evidence, we agree with the trial judge that defendant has failed to support its assignment in such regard.   To sustain such an assignment we have a right to expect, as did the trial judge, that counsel will present in fair detail an analysis of evidence tending, as claimed, to show that the jury strayed from the facts to and beyond the extreme limits we have defined (*McConnell* v. *Elliott,* 242 Mich 145; *Schneider* v. *Pomerville,* 348 Mich 49).

No such showing has been made, either in brief or oral argument.

Affirmed.    Costs to plaintiffs.

SMITH, EDWARDS, and VOELKER, JJ., concurred with BLACK, J.

CARR, J. (*concurring in affirmance*).   Under the testimony in the case the trial judge was fully justified in submitting to the jury the question as to defendant's liability on the ground of subsequent negligence.   The legal principles considered and approved in *Golob* v. *Detroit United Railway,* 228 Mich 201, and in other decisions in which the question has been involved, are controlling here.   Under the charge submitting the case for determination the jury obviously concluded that plaintiff Dunn was placed in a position of danger as the result of lack of proper care on his part, that he was unable to extricate himself therefrom, that defendant's employee saw, or should have seen, said plaintiff in a position of danger, that said employee by the exercise of reasonable care under the circumstances might have avoided injuring plaintiff Dunn, and that defendant was guilty of subsequent negligence because of the failure to observe the duty resting on it.   Such conclusion is supported by the record.   The verdict was not against the weight of the evidence, as urged in support of the motion for a new trial, and we find in the charge to the jury no error prejudicial to defendant.

The affirmance of the judgment entered on the verdict of the jury is not inconsistent with the action of this Court in *Rosenfeld* v. *City of Detroit,* 274 Mich 650, or with the result reached in *Bruer* v. *City of Detroit,* 332 Mich 613.   In each instance where the doctrine of subsequent negligence is relied on as the basis for recovery of damages the facts as indi-

cated by the proofs are controlling. The facts in the *Rosenfeld Case* clearly distinguish the decision there rendered from the conclusions reached in the case at bar. The trial court directed a verdict in favor of the defendant and the judgment entered thereon was affirmed. It appears from the record in the case that the proofs failed to show that the employee in charge of defendant's streetcar could have avoided the accident after discovering, or being charged with the duty of discovering, that plaintiff Rosenfeld could not cross the track to a place of safety. This Court, in consequence, concluded that the doctrine of subsequent negligence was not applicable.

In the *Bruer Case* the testimony indicated that the plaintiff was on the track for a period of from 30 to 35 seconds, that in the exercise of ordinary care he might have observed the streetcar approaching for a distance of not less than 600 feet, and that he took no action for his own safety. The proofs failed to establish that he could not have driven his car from the track in safety and thus avoided injury to himself. On the basis of the record, the case was distinguished from *Golob* v. *Detroit United Railway, supra.* Neither the *Rosenfeld* nor the *Bruer Case* may be regarded as at variance with the recent decision in *Citizens' Mutual Automobile Insurance Company* v. *City of Detroit,* 348 Mich 329, or with the conclusions reached in the case at bar. In consequence neither of said prior decisions should be regarded as overruled.

Judgment affirmed.

DETHMERS, C. J., and SHARPE, and KELLY, JJ., concurred with CARR, J.