## ARMSTRONG v LeBLANC

Docket No. 55661. Argued December 12, 1974 (Calendar No. 12).—
    Decided December 18, 1975.

Joseph Armstrong, a state police officer, was struck by a truck
    while talking to the driver of a vehicle which had stopped at
    the side of the road. Armstrong and his wife, Beverly, brought
    an action for damages against John E. LeBlanc, the owner of
    the truck, and Ralph F. Emerson, the driver. The Saginaw
    Circuit Court, Joseph R. MacDonald, J., directed a verdict for
    plaintiffs on the issues of negligence and contributory negli-
    gence, finding the driver guilty of subsequent negligence, and
    judgment was entered on a verdict finding damages. The Court
    of Appeals, Bronson, P. J., and Quinn and Van Valkenburg, JJ.,
    affirmed as to plaintiff Joseph Armstrong and reversed as to
    the derivative action of Beverly Armstrong for loss of consor-
    tium because of insufficiency of proof (Docket No. 15312).
    Defendants appeal.

1. Whether defendant exercised due care under the circum-
    stances is a determination that should have been made by the
    jury where plaintiff's testimony indicated that he was standing
    on the edge of the highway and were the jury to believe
    plaintiff's testimony as to his own position on the highway, it
    cannot be said that no reasonable person would hold defendant
    free from negligence.

2. A sufficient question of fact was presented on the issue of
    defendant driver's subsequent negligence to warrant determina-
    tion of the issues of plaintiff's contributory negligence and the
    driver's subsequent negligence by the jury.

3. In future cases which consider the doctrine of subsequent
    negligence, the requirement that plaintiff be in a dangerous

References for Points in Headnotes

[1, 7] 75 Am Jur 2d, Trial §§ 476–480.
[2, 7] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 1002–1004.
[3, 7] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 188, 720, 721.
[4, 7] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 361, 362.
[5–7] 57 Am Jur 2d, Negligence §§ 378–385.
[8] 57 Am Jur 2d, Negligence §§ 388, 389.

position or situation is expanded by permitting the jury to examine the facts and determine whether, while in this position of peril, he knew, or had reason to know, of a course of action which might have been taken to extricate himself from his position.

4. Reasonable men could have differed as to whether, under the circumstances, plaintiff acted reasonably to avoid the harm which he ultimately suffered.

Reversed and remanded for new trial.

Williams, J., concurred, but reserved for an appropriate case a review of the inconsistency of the concept of concurrent negligence in a doctrine of last clear chance.

51 Mich App 652; 216 NW2d 79 (1974) reversed.

OPINION OF THE COURT

1. MOTIONS—DIRECTED VERDICT—QUESTION OF FACT.

The proper test for determining whether a plaintiff should be granted a motion for directed verdict is whether reasonable men could reach different conclusions from facts taken in the light most favorable to defendant; if so, the question should be resolved by the jury.

2. AUTOMOBILES—NEGLIGENCE—QUESTION OF FACT.

The question of a defendant truck driver's negligence was for the jury in a case where he was traveling at 30 to 35 miles an hour within a 65-mile-an-hour speed zone, the road conditions were hazardous, and defendant attempted to avoid colliding with plaintiff, who he last observed standing on the shoulder of the road leaning over talking into the window of a parked car nearest the defendant, by moving his truck to the left when approximately 200 feet from the point of collision, and where plaintiff's testimony indicated that he was standing on the edge of the highway; were the jury to believe plaintiff's testimony, it cannot be said that no reasonable person would hold defendant free of negligence.

3. AUTOMOBILES—ASSURED CLEAR DISTANCE—STATUTES.

The assured clear distance statute was inapplicable where a defendant truck driver attempted to avoid striking the plaintiff by steering his vehicle toward the left; whether he was traveling at a proper speed under the existing conditions which would permit him to stop prior to striking the plaintiff was not at issue (MCL 257.627).

4. Automobiles—Negligence—Contributory Negligence—Subse-
   quent Negligence.

    A sufficient question of fact for the jury was presented on the
issue of plaintiff's contributory negligence and the doctrine of
subsequent negligence where a truck driver was traveling at 30
to 35 miles an hour within a 65-mile-an-hour speed zone, the
road conditions were hazardous, defendant attempted to avoid
colliding with plaintiff, a state police officer who was standing
at the side of the road talking to another driver that he had
just pulled over, and at no time did the plaintiff look toward
defendant's oncoming truck, nor did he attempt to remove
himself from the path of the approaching vehicle.

5. Negligence—Subsequent Negligence—Proximate Cause.

    The doctrine of subsequent negligence considers any antecedent
negligence by a plaintiff which places him in a dangerous
position a remote cause of any injury he may suffer where the
proximate cause of the injury is attributable to the subsequent
intervening negligence of the defendant; however, where plain-
tiff's negligence is concurrent with that of defendant, the
doctrine may not be invoked and plaintiff's contributory negli-
gence will prevent recovery.

6. Negligence—Subsequent Negligence—Dangerous Position—
   Question of Fact.

    In future cases which consider the doctrine of subsequent negli-
gence, the requirement that plaintiff be in a dangerous position
or situation will be expanded by permitting the jury to examine
the facts and determine whether, while in this position of peril,
he knew, or had reason to know, of a course of action which
might have been taken to extricate himself from his position.

Concurring Opinion

Williams, J.

. See headnotes 1–6.

7. Negligence—Concurrent Negligence—Last Clear Chance.

    *The Supreme Court should reserve the option in an appropriate
case to review the inconsistency of the concept of concurrent
negligence in a doctrine of last clear chance.*

*van Benschoten & van Benschoten, P. C.,* (by
*Harvey E. van Benschoten),* for plaintiffs.

*Collison & Fordney, P. C.* (by *Charles C. Collison),* for defendants.

J. W. FITZGERALD, J. Defendants appeal from the Court of Appeals affirmance of a directed verdict granted to plaintiffs which determined defendants liable on the issues of negligence and contributory negligence. Our review of the facts convinces us that the question of liability should have been determined by the jury and we must reverse and remand for a new trial.

At approximately 9:30 on the morning of December 30, 1968, plaintiff Joseph M. Armstrong, a state police officer assigned to patrol portions of Saginaw County, observed a vehicle traveling northbound at a very high rate of speed on Dixie highway, a four-lane, undivided highway. Officer Armstrong pursued the speeding vehicle for approximately 8 miles, clocking its speed in excess of 80 miles per hour. Unable to gain the driver's attention by flashing a red spotlight into his rear window, Armstrong changed into the passing lane alongside of the driver and aimed a flashing red light directly at the driver, motioning him over to the side of the road. The driver reduced his speed immediately, steered to the right, and came to a stop on the right shoulder of the highway. Aware that the passing lane was slippery and wanting to avoid sliding into the speeding vehicle, Armstrong drove ahead and stopped at the side of the road approximately eight to ten feet in front of the speeding vehicle. Armstrong testified that his police vehicle came to rest with the left wheel just on the right edge of the highway while the vehicle behind was positioned with the left wheel just off the edge of the highway.

Plaintiff Armstrong further testified that he turned on the flashing lights located on the left

θ

rear fender of the police vehicle and walked back to speak with the driver. As he approached the car, he noticed defendant's truck traveling toward him about 3/10 of a mile away. He was unable to estimate the speed of the truck and did not notice the lane in which it was traveling. He stood on the edge of the pavement beside the driver's window and asked to see his operator's license, registration, and proof of insurance. Plaintiff believes he may have straightened up intending to return to his vehicle when he was struck by a mirror which extended from the cab of defendant's truck. He suffered a broken collar bone and forearm, a collapsed lung, and sustained multiple fractures of the right ribs. At no time did he look toward defendant's oncoming truck, nor did he attempt to remove himself from the path of the approaching vehicle.

Defendant Emerson testified that he was operating his truck in a northerly direction on Dixie highway at 30 to 35 miles an hour. At a distance he estimated to be two or three city blocks, defendant observed two parked vehicles. After traveling further, he noticed the cars parked on the shoulder of the road and a patrolman standing on the shoulder leaning with his elbows and arms resting on the driver's window of the nearest vehicle. Defendant continued in the right, or curb, lane until a point approximately 200 feet from the plaintiff. Seeking to avoid striking the officer, he then turned toward the center of the road until the left wheel of the truck was on the broken line which divided the northbound lane of Dixie highway. The dividing line was covered by snowdrifts in some spots and the road was slippery. Defendant testified that the last time he saw the plaintiff he was leaning over talking to the driver. After

hearing a thump, he applied the brakes, stopped his truck, and ran back to assist the plaintiff. Defendant estimated that the width of each lane of Dixie highway measured approximately nine feet, estimated the width of his truck to be eight feet, and thought the rear-view mirrors extended out from the side of the truck six to eight inches. Defendant did not see any flashing lights on plaintiff's vehicle.

A jury trial was conducted in which plaintiff sought money damages for injuries suffered and his wife, Beverly, sought damages for loss of consortium. Plaintiffs' motions for directed verdicts on the issues of negligence and contributory negligence were granted. The trial court ruled defendant negligent as a matter of law, determining his conduct to be the proximate cause of plaintiff's injuries. Any antecedent negligence of plaintiff constituted only a remote cause of the injuries, being superseded by defendant's subsequent intervening negligence. Defendants' motion for directed verdict as to Beverly Armstrong was denied. The jury awarded plaintiff $50,000 and his wife $1,000. The Court of Appeals affirmed the judgment of the lower court as to plaintiff Joseph Armstrong and reversed his wife's award for loss of consortium. Defendants now appeal to this Court, challenging the directed verdict in plaintiffs' favor.

The issue before us is whether the trial court committed reversible error in directing verdicts against defendant on the issues of defendant's negligence and plaintiff's contributory negligence. Defendants first argue that the determination of negligence should have been made by the jury since the evidence submitted could enable reasonable men to differ on the question of whether defendant acted negligently. Plaintiff disagrees,

contending that defendant was negligent as a matter of law in violation of common-law principles of ordinary care as well as the assured clear distance statute.[1]

The proper test for determining whether plaintiff should be granted a motion for directed verdict is whether reasonable men could reach different conclusions from facts taken in the light most favorable to defendant. If so, the question should be resolved by the jury. *Sparks v Luplow,* 372 Mich 198; 125 NW2d 304 (1963); *Kroll v Katz,* 374 Mich 364; 132 NW2d 27 (1965). Defendant states that reasonable minds could differ as to whether he had acted negligently when the following factors are considered: defendant was traveling at 30 to 35 miles an hour within a 65-mile-an-hour speed zone; the road conditions were hazardous; defendant attempted to avoid colliding with plaintiff by moving his vehicle to the left when approximately 200 feet from the point of collision; defendant last observed plaintiff standing on the shoulder of the road leaning over talking into the window of the vehicle nearest the defendant. Plaintiff's testimony, however, indicated that he was standing on the edge of the highway. Were the jury to believe plaintiff's testimony as to his own position on the highway, we cannot say that no reasonable person would hold defendant free from negligence. Whether defendant exercised due care under the circumstances is a determination that should have been made by the jury.

---

[1] MCLA 257.627; MSA 9.2327 provides:

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other condition then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured, clear distance ahead."

Defendant's negligence is not based upon a violation of the assured clear distance statute. He attempted to avoid the plaintiff by steering his vehicle toward the left. Whether he was traveling at a proper rate of speed under the existing conditions which would permit him to stop prior to striking the plaintiff is not at issue. The statute is inapplicable.

We come now to the question of plaintiff's contributory negligence and the doctrine of subsequent negligence.[2] The Court of Appeals concedes that a question of fact existed as to whether plaintiff was performing his duty in a manner dangerous to his own safety, but concluded that a finding of contributory negligence would still render defendant liable because of his subsequent negligence. Reviewing the appropriateness of the trial court's entry of a directed verdict for plaintiffs on the basis of subsequent negligence, we are persuaded that a sufficient question of fact was presented on this issue to warrant determination by the jury.

This case aptly demonstrates why the troublesome concept of subsequent negligence has through the years engendered "little agreement and endless discussion".[3] *LaCroix v Grand T W R Co,* 379 Mich 417; 152 NW2d 656 (1967), quoted extensively by defendant, examines the theory and application of subsequent negligence. The doctrine considers any *antecedent* negligence by a plaintiff, which places him in a dangerous position, a *remote* cause of any injury he may suffer where the *proximate* cause of the injury is attributable to the subsequent intervening negligence of the defend-

---

[2] Conduct also referred to as discovered negligence, last clear chance, discovered peril, the humanitarian rule, and gross negligence.

[3] Prosser, Torts (4th ed), § 66, p 427.

ant. This is said to occur when a defendant "who knows, or ought, by the exercise of ordinary care, to know, of the precedent negligence of the plaintiff, by his subsequent negligence does plaintiff an injury".[4] However, where plaintiff's negligence is *concurrent* with that of the defendant, the doctrine may not be invoked and plaintiff's contributory negligence will prevent recovery. Defendant argues that plaintiff's negligence was concurrent with his own and should operate to defeat plaintiff's claimed recovery. Plaintiff responds, also advancing *LaCroix* as supportive authority, but concludes that plaintiff's negligence was, in fact, antecedent to defendant's subsequent intervening negligence which constituted the sole proximate cause of the accident.

We are asked to assess liability by classifying negligent conduct within a framework of time and space which examines foreseeability, judgment, and causality. Considered are the metaphysical vagaries which accompany categories of negligence termed *antecedent, concurrent,* and *subsequent intervening.* Plaintiff's conduct arguably ranges from a significant contributing factor in sustaining the injury to one which is described as being harmlessly remote. The difficulty in resolving the question of liability becomes apparent when the trial court chooses to determine whether negligent conduct ceases to operate as a proximate cause of the accident or continues to a point concurrent with or subsequent to the negligence of another.

Defendant concludes that plaintiff's negligence was concurrent with his own because a question of fact existed as to plaintiff's contributory negligence. This result does not necessarily follow, yet we believe that sufficient questions of fact were

---

[4] *LaCroix, supra,* p 423.

raised to warrant determination by a jury. Nor can we adopt entirely plaintiff's position which summarily precludes jury examination of his own conduct by relying upon the doctrine of subsequent negligence according to the following criteria set forth in *Papajesk v C & O R Co,* 14 Mich App 550, 556; 166 NW2d 46, 49 (1968):

"(1) Plaintiff is in a position or situation which has become dangerous. (2) Defendant knows or by the exercise of ordinary care ought to know, of plaintiff's peril. (3) Defendant must have the means to avoid the harm by the use of ordinary care. (4) Failure of defendant to use due care when it could be reasonably foreseen that ordinary negligence is likely to cause harm."

These criteria do not allow for consideration of whether plaintiff had an opportunity to extricate himself from an impending threat of injury. Just as defendant is required to exercise due care to avoid injuring others, so too must the plaintiff take reasonable precautions for his own safety where he arguably has the means to avoid injury. Accepting without further examination the fact that plaintiff was in a dangerous position ignores authority which requires one, where possible, to extricate himself from such a perilous circumstance. This Court stated in *Krouse v Southern Michigan R Co,* 215 Mich 139, 145–146; 183 NW 768, 770 (1921):[5]

"There is a vast difference between negligently getting in a place of danger without ability to remove

---

[5] *Krouse* involved the death of a woman struck by a train while sitting in an automobile which had stalled on the railroad tracks. The facts of the instant case do not indicate such an egregious failure to be watchful of one's own safety. But a jury conceivably could conclude that plaintiff, occupying his position on the highway, should have been aware of the threat of injury to himself and taken measures to remove himself from the path of defendant's truck.

therefrom and remaining in such a place after the danger is apparent and there is opportunity open to avoid injury and a way to escape pointed out.

* * *

"It was her negligence in continuing in the place of danger after she was fully aware of her peril that was as much the efficient cause of the accident as defendant's negligence."

In *Paquette v Consumers Power Co,* 316 Mich 501, 511–512; 25 NW2d 599, 602 (1947), plaintiff stopped on the highway to remove frost from his windshield. Upon exiting the car, he noticed defendant's vehicle at 200 feet traveling toward him, did not look again at defendant's approaching vehicle, and was eventually struck and injured by defendant. Plaintiff sought damages for the injuries suffered but this Court upheld the judgment *non obstante veredicto* for defendant stating:

"Furthermore, although he saw defendants' car coming when it was 200 feet distant, he paid no further attention to it until it was but 20 feet distant and too late to avoid the accident. Applicable here is the following language from *Boerema v Cook,* 256 Mich 266, 268 [239 NW 314, 315 (1931)]:

" 'The requirement that one must use reasonable care for his own protection was not satisfied with the single observation which plaintiff made. * * * The situation was such as to call for further observation.'

"In the case of *Stern v Franklin,* 290 Mich 467, 471 [287 NW 880, 881–882] (8 NCCA [NS] 113) [1939], we quoted with approval from 3 Cooley on Torts (4th ed) p 423:

" 'One who voluntarily places himself in, or remains in, a position which he knows, or with reasonable care should know, is dangerous, * * * cannot recover for the ensuing injury.' "[6]

---

[6] *See, also, Hickey v Smith,* 277 Mich 123; 268 NW 833 (1936); *Dahlerup v Grand Trunk W R Co,* 319 Mich 96; 29 NW2d 156 (1947); *Hakkers v Hansen,* 337 Mich 620; 60 NW2d 487 (1953); *Young v Detroit Terminal R Co,* 287 Mich 120; 282 NW 924 (1938).

Justice BLACK succinctly addressed this point together with his belief that matters of subsequent negligence are best determined by a jury in *Dunn v Detroit,* 349 Mich 228, 234, 235; 84 NW2d 501, 504–505 (1957).

"As in all cases when the trial judge is moved for an instructed verdict on assigned ground of contributory negligence, the difficulty is not so much with the rule as with its applicability—as a matter of law—to the facts of the particular case. *The question resolves itself into one of determination of proximate cause or causes, and such is usually one of fact for the trier or triers of fact* [citations omitted]. Determination thereof by such trier or triers always depends on receipt of proof tending directly or by proper inference to show that the defendant did discover, or by the exercise of ordinary care should have discovered, *that the plaintiff was helpless to avoid the impending harm,* and that such discovery was made or should have been made in time to avoid such harm by means at hand. Invariably, the question involves fact elements of time and distance. *Where, as here, allotted time and distance unite in providing that interval which reasonably calls for comprehension and preventive action, the doctrine rightfully comes into play for jury consideration.* " (Emphasis supplied.)

We make no judgment as to whether plaintiff took the necessary precautions to adequately protect himself against the threat of bodily injury. The authorities cited serve to express our dissatisfaction with the dogmatic application of the subsequent negligence doctrine and the grant of a directed verdict to plaintiff where, as here, the facts could arguably demonstrate that the plaintiff who finds himself in a dangerous position may not have exercised reasonable care for his own protection. These are matters more appropriately determined by the triers of fact. The possibility of inequitable results exists when examination focuses solely

upon the defendant's conduct where both plaintiff and defendant arguably possess a final opportunity to avoid the injury. This not only places an undue burden upon defendant, but also rewards persons who ignore the duty to exercise due care for their own safety.

In future cases which consider the doctrine of subsequent negligence, we would expand the requirement that plaintiff be in a dangerous position or situation by permitting the jury to examine the facts and determine whether, while in this position of peril, plaintiff knew, or had reason to know, of a course of action which might have been taken to extricate himself from a position of peril. Reasonable men could have differed as to whether, under the circumstances, plaintiff acted reasonably in order to avoid the harm which he ultimately suffered.

Reversed and remanded for new trial. Costs to abide outcome.

T. G. KAVANAGH, C. J., and WILLIAMS, LEVIN, and COLEMAN, JJ., concurred with FITZGERALD, J.

LINDEMER and RYAN, JJ., took no part in the decision of this case.

WILLIAMS, J. *(concurring).* I concur with my Brother FITZGERALD but reserve the option in an appropriate case to review the inconsistency of the concept of concurrent negligence in a doctrine of last clear chance.