RANGE v GOROSH

Docket No. 57311. Submitted April 12, 1982, at Detroit.—Decided
    November 2, 1982. Leave to appeal applied for.

Irene Range was injured in an automobile accident in which the
    car in which she and her husband, Harris Range, were travel-
    ing was struck by an automobile operated by Susan Gorosh and
    owned by Martin Gorosh. The Ranges filed suit in Oakland
    Circuit Court against the Goroshes. Irene Range sought dam-
    ages for her injuries and Harris Range sought damages for loss
    of consortium. The defendants admitted liability at the trial.
    The only issue for the court's determination was whether Irene
    Range sustained serious impairment of body functions under
    the no-fault automobile insurance act. The court, Robert C.
    Anderson, J., entered judgment for the defendants on a jury
    verdict of no cause of action. The plaintiffs appeal, alleging that
    the trial court erred in refusing (1) to direct a verdict in their
    favor on the issue of whether the injuries Irene Range sus-
    tained constituted a serious impairment of body function, and
    (2) to include in the instructions to the jury their proposed
    supplemental instruction regarding the standards for determin-
    ing serious impairment of a body function. *Held:*

1. The trial court did not err in refusing to direct a verdict
    for the plaintiffs on the issue of whether Irene Range suffered a
    serious impairment of body function. The injuries suffered by
    Mrs. Range do not constitute a serious impairment of body
    function as a matter of law. The evidence was of such a nature
    that a jury reasonably could render a verdict of no cause of
    action. The Court of Appeals declined to make a general
    unvarying rule that a broken clavicle is a serious impairment
    of body function. The Court will be constrained to review each
    case on its facts to determine whether all reasonable persons
    would find as did a trial judge.

2. The trial court did not err in denying the plaintiffs'
    request for the additional instruction to the jury. The proposed

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial § 500.
[2] 7 Am Jur 2d, Automobile Insurance §§ 3, 349, 358.
[3] 75 Am Jur 2d, Trial § 573 *et seq.*

instruction was slanted in the plaintiffs' favor. The use of Standard Jury Instructions is mandatory whenever the instructions are applicable, accurate, and requested by a party. The standard jury instruction was the correct instruction to give in this case.

Affirmed.

1. MOTIONS AND ORDERS — DIRECTED VERDICT — EVIDENCE.

A trial court should view the evidence in a light most favorable to the defendant in considering a plaintiff's motion for a directed verdict and if reasonable persons could reach different conclusions therefrom the question should be submitted to the jury.

2. INSURANCE — NO-FAULT INSURANCE — SERIOUS IMPAIRMENT — PERMANENT SERIOUS DISFIGUREMENT.

The phrases "serious impairment of body function" and "permanent serious disfigurement" as used in a section of the no-fault automobile insurance act are not less precise than those which have been adopted to express other standards for determining tort liability; they are within the province of the trier of fact and are sufficient for legal interpretation (MCL 500.3135[1]; MSA 24.13135[1]).

3. TRIAL — STANDARD JURY INSTRUCTIONS.

The pertinent portions of the Standard Jury Instructions shall be used to instruct the jury whenever they are applicable, accurate, and requested by a party (GCR 1963, 516.6[2]).

*Charfoos, Christensen, Gilbert & Archer, P.C.* (by *Adrienne G. Southgate*), for plaintiffs.

*Condit, McGarry & Schloff, P.C.* (by *Richard P. Condit*), for defendants.

Before: N. J. KAUFMAN, P.J., and V. J. BRENNAN and BEASLEY, JJ.

BEASLEY, J. On April 2, 1981, an Oakland County jury returned a no cause of action verdict in favor of defendants, Susan E. Gorosh and Martin Gorosh, in an automobile accident negligence case. From this verdict, plaintiffs, Irene Range and Harris Range, appeal as of right.

This litigation arose out of a motor vehicle accident on July 20, 1976, where the automobile in which plaintiffs were traveling was struck at an intersection in Oak Park by an automobile operated by defendant Susan Gorosh and owned by defendant Martin Gorosh. Since liability was admitted by defendants at trial, the sole issue for the jury's determination was whether plaintiffs sustained serious impairments of body functions under the no-fault act[1] and, if so, the amount of compensable damages.[2]

On appeal, Irene Range (hereafter plaintiff) raises two issues. First, she asserts that the trial court erred in refusing to direct a verdict in her favor on the issue of whether the injuries she sustained constituted a serious impairment of body function.

The undisputed evidence established that as a result of the automobile accident, plaintiff, a 60-year-old woman, sustained fractures of the right clavicle, six ribs, and the small toe of the right foot and was hospitalized for four days. Plaintiff's treating physician, Dr. George Moriarity, authorized her to return to her position as a custodian with the Detroit Public Schools on January 31, 1977.

Plaintiff testified that (1) she was unable to return to her position as a custodian on a full-time basis until February of 1977, (2) for a period of three months subsequent to the accident, she was unable to perform various household tasks, and (3) she continued to experience pain in the area of her ribs and had difficulty breathing.

Plaintiff also presented the depositional testi-

---

[1] MCL 500.3135(1); MSA 24.13135(1).

[2] Harris Range's claim on appeal appears to be limited to a consortium claim, derivative of Irene Range's action.

mony of a board-certified specialist in thoracic medicine, Dr. Hershel Mozen, who stated that plaintiff was referred to him for an examination and an evaluation by a member of the law firm representing plaintiff. On November 12, 1976, which was the only time he saw plaintiff, Dr. Mozen performed a physical examination which involved a patient history, an electrocardiogram, and various x-rays. As a result of the examination, Dr. Mozen concluded that plaintiff was suffering from heart and lung disease, post-traumatic pleural thickening and fibrosis, and injuries to the right clavicle, right foot, right shoulder, right knee, right lower leg, and several ribs. He further claimed that plaintiff's heart and lung diseases were preconditions that were exacerbated by the accident.

On cross-examination, Dr. Mozen admitted that he was unaware of plaintiff's current condition, as he had not spoken with her since the physical examination. Additionally, he admitted that he did not discuss plaintiff's case with the treating physician, Dr. Moriarity, in relation to professional services rendered by Dr. Moriarity, and that he received $625 in compensation for the physical examination, evaluation, and his testimony taken by deposition.

Defendants presented the videotape-recorded desposition of the treating physician, Dr. Moriarity. It appears that plaintiff's attorney scheduled the taking of the deposition on July 11, 1979; however, for undisclosed reasons, plaintiff's counsel declined to proceed with the deposition. Thereupon, defendants' counsel examined the witness, and plaintiff's counsel did not choose to ask any questions of the family doctor during the videotape-recorded deposition.

Dr. Moriarity testified that he treated plaintiff in connection with the accident on ten occasions over a five-month period, and that he saw her three times thereafter pertaining to general health problems. In addition, he related that he authorized plaintiff's return to work on January 31, 1977, and that his medical fee for the entire treatment was $135. Our careful review of Dr. Moriarity's testimony reveals that he did not indicate that plaintiff sustained any degree of body impairment.

The essential question on appeal is whether the evidence adduced by plaintiff established that she sustained, as a matter of law, a serious impairment of body function.

In considering a plaintiff's motion for a directed verdict, a trial court views the evidence in a light most favorable to the defendant; if reasonable persons could reach different conclusions therefrom, the question should be submitted to the jury.[3]

In automobile accident negligence cases, this Court, in several instances, has addressed the issue of whether a plaintiff's injuries constituted a serious impairment of a body function under the no-fault statute. The beginning point for such analyses is *Advisory Opinion re Constitutionality of 1972 PA 294*,[4] where the Supreme Court held:

"The final question is whether the phrases 'serious impairment of body function' and 'permanent serious

---

[3] *Armstrong v LeBlanc,* 395 Mich 526, 532; 236 NW2d 419 (1975); *Cassidy v McGovern,* 98 Mich App 100, 102; 296 NW2d 200 (1980), *lv den* 410 Mich 861 (1980); *Heller v Select Lake City Theatre Operating Co,* 187 F2d 649 (CA 7, 1951).

[4] 389 Mich 441, 477-478; 208 NW2d 469 (1973). See, also, Ransom and Sinas, *No-Fault: Major Issues of the Moment,* 61 Mich B J 618, 620-624 (1982), for a summary and appraisal of the threshold injury concept.

disfigurement' provide standards sufficient for legal interpretation.

"This Court holds that such phrases are capable of legal interpretation and, indeed, that juries or judges sitting without juries frequently have and do interpret comparable phrases bearing upon various facets of the law. Such findings result from denominated fact questions and thus are within the exclusive province of the triers of fact. Only when interpretation approaches or breaches permissible limits does it become a question of law for the Court. Such questions must be approached on a case by case basis."

In four cases, this Court has upheld the granting of summary judgments in favor of defendants on the threshold issue.[5] In *Abraham v Jackson*,[6] *Cassidy v McGovern*,[7] and *Fidler v MacKinder*,[8] this Court upheld the trial court's denials of the plaintiffs' motions for directed verdicts on the serious impairment issue.

The plaintiff in *Fidler* presented medical testimony from three physicians and a private vocational rehabilitation counselor which indicated that she suffered serious and disabling injuries. The *Cassidy* case involved a plaintiff who suffered a double fracture of the lower bones of his right leg as a result of an automobile accident. He was required to wear four different casts on the leg during a seven-month period. The plaintiffs in the *Abraham, Cassidy,* and *Fidler* cases each claimed

[5] *Vitale v Danylak,* 74 Mich App 615; 254 NW2d 593 (1977), *lv den* 403 Mich 848 (1978) (stiff neck); *Harris v McVickers,* 88 Mich App 508; 276 NW2d 629 (1979), *lv den* 406 Mich 929 (1979) (headaches, stiff neck, and knee pains); *Brooks v Reed,* 93 Mich App 166; 286 NW2d 81 (1979), *lv den* 411 Mich 862 (1981) (arm injury); *Hermann v Haney,* 98 Mich App 445; 296 NW2d 278 (1980), *lv gtd* 410 Mich 921 (1981) (bruises and bump on forehead).

[6] 102 Mich App 567; 302 NW2d 235 (1980).

[7] *Supra,* fn 3.

[8] 113 Mich App 523; 317 NW2d 672 (1982).

on appeal that the issue of serious impairment should not have been referred to the jury, and we affirmed the trial courts.

In light of the language contained in the no-fault act and the Supreme Court's *Advisory Opinion, supra,* we hold that the injuries incurred here do not constitute a serious impairment of a body function as a matter of law. We do not suggest that injuries flowing from an automobile accident never can amount to a serious impairment of a body function as a matter of law. For instance, permanent blindness or permanent paraplegia are injuries that would not be submitted to the jury on the issue of serious impairment.

We recognize that a panel of this Court, which included this writer, held in *Burk v Warren*[9] that the injured party's fractured clavicle, which did not result in permanent damage, constituted a serious impairment of body function as a matter of law. In view of our foregoing analysis, we are no longer willing to follow the *Burk* rationale and to hold that a broken clavicle is, in all events, a serious impairment of body function as a matter of law. Rather, we decline to make a general unvarying rule holding that a broken clavicle is a serious impairment of body function. We will be constrained to review each case on its facts to determine whether all reasonable persons would find as did a trial judge.

The evidence in the matter at bar was of a nature that a jury reasonably could render a verdict of no cause of action. The expert witness for plaintiff, Dr. Mozen, was not the treating physician, nor did he examine her on more than one occasion. Dr. Mozen's failure to contact Dr. Moriarity, the treating physician, and his realization

[9] 105 Mich App 556; 307 NW2d 89 (1981).

of $625 from his role in the case, may have caused the jury to discredit his testimony.

In regard to Dr. Moriarity, the jury may have considered that defendants were the parties who introduced his videotape-recorded deposition into evidence, and that his evaluation of plaintiff's condition substantially conflicted with the opinion offered by Dr. Mozen.

While plaintiff testified that she unremittingly suffers from a series of maladies caused or exacerbated by the accident, the evidence established that she returned to work in February, 1977, which was approximately six months after the accident. We, therefore, conclude that the trial judge did not err in denying plaintiff's motion for a directed verdict, since plaintiff's incapacity was not of such a magnitude that all reasonable jurors would agree that it constituted a serious impairment of a body function.

Plaintiff also assigns as error the trial judge's refusal to include in the jury instructions plaintiff's proposed supplemental instruction regarding the standards for determining serious impairment of a body function:

"In making the determination of whether either party has suffered serious impairment of body function, you are instructed that, in order to meet the threshold of serious impairment, either the initial injury must be severe or the effects must be continuing—either permanent or long-term. Among the factors to be considered are the extent of the injury, treatment required, duration of disability, extent of residual impairment, and prognosis for eventual recovery. Additional factors may also be considered, but not all the factors mentioned need be present to find serious impairment in a given case.

"The more extensive or severe the injuries, the less

need for residual impairment. By the same token, a relatively less disabling condition which is permanent or of significantly long duration or recurring may constitute serious impairment by virtue of its longevity. The more likely the impairment will be recurring or of a permanent nature, the less severe the condition must be for plaintiff to recover."

Rather than giving this instruction, the trial court instructed the jury according to SJI 36.01:

"The law in Michigan provides that plaintiff may recover (non-economic loss) damages in this case if [he/she] suffered serious impairment of a body function. Based upon the evidence in this case, you must decide whether plaintiff suffered an impairment of a body function and, if so, whether that impairment of a body function was serious.

"An impairment need not be permanent to be serious.

"The terms 'serious,' 'impairment,' and 'function' have no special or technical meaning in the law and should be considered by you in the ordinary sense of their common usage."

Plaintiff's proposed instruction was taken from principles set forth in *Hermann v Haney.*[10] We find that the proposed instruction is slanted in plaintiff's favor because it does not recite the converse of the stated proposition: that an injury which is minor and brief in duration is evidence of an impairment that does not amount to a serious impairment of a body function.

In *Javis v Ypsilanti School Dist,*[11] the Supreme Court ruled that the use of Standard Jury Instructions is mandatory whenever they are applicable, accurate, and requested by a party. We find that

---

[10] *Supra,* fn 5, p 449.

[11] 393 Mich 689; 227 NW2d 543 (1975); accord, *Snow v Freeman,* 119 Mich App 677; 326 NW2d 598 (1982).

SJI 36.01 was the correct instruction to give in this case.

While GCR 1963, 516.6(4) permits a trial judge to give additional instructions that are not covered by the Standard Jury Instructions, we hold that the trial court did not abuse its discretion by denying plaintiff's request for the additional instruction.

Affirmed.